# 22-2684-CV

## United States Court of Appeals
### *for the*
## Second Circuit

CHARITY BUSTAMANTE, individually and on behalf of all others similarly situated, AMANDA SHORT, SARAH THOMAS, on behalf of themselves and all others similarly situated, ELIZABETH LIVINGSTON,

*Plaintiffs-Appellants,*

AMY CAVANAGH, individually and on behalf of all others similarly situated, ROBERT O'BRIEN, individually, and on behalf of all others similarly situated, MAYRA GALVEZ, individually and on behalf of all others similarly situated, CHRIS C. GALVEZ, individually and on behalf of all others similarly situated, BRANDON KAUFER, DENA KARNEZIS, individually and on behalf of all others similarly situated, DANIELLE COOPER, individually and on behalf of all others similarly situated, LEE JACKSON, individually and on behalf of all others similarly situated, CHARLIE McDONALD, BENJAMIN KARTER, individually and on behalf of all others similarly situated and the general public, MELANIE HOUSE, individually and on behalf of all others similarly situated, ERICH ZANDER, BONNIE BURKETT, BARRY A. COHEN,

*Plaintiffs,*

– v. –

KIND, LLC, a New York limited liability company,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REDACTED BRIEF
## FOR PLAINTIFFS-APPELLANTS

BRADLEY K. KING
AHDOOT & WOLFSON, PC
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111

TODD S. GARBER
FINKELSTEIN, BLANKINSHIP, FREI-PEARSON
& GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
(914) 298-3283

*Attorneys for Plaintiffs-Appellants*
*(For Continuation of Appearances See Inside Cover)*

Daniel L. Warshaw
Pearson, Simon & Warshaw, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
(818) 788-8300

*Attorneys for Plaintiffs-Appellants*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ........................................................5

STATEMENT OF ISSUES .................................................................5

STATEMENT OF THE CASE.............................................................6

    I.    MDL Centralization and Stay .............................................6

    II.    Judge Pauley Grants Class Certification ..............................8

    III.    Judge Pauley's Passing and Transfer of Case to Judge Buchwald ..................................................................................9

    IV.    Judge Buchwald Grants Summary Judgment and Decertifies the Classes ..................................................................10

SUMMARY OF ARGUMENT ..............................................................13

STANDARD OF REVIEW .................................................................14

ARGUMENT ..................................................................................17

    I.    Judge Buchwald Erroneously Granted Summary Judgment by Improperly Weighing Evidence and Erroneously Concluding that Expert Testimony Was Required to Establish a Genuine Issue of Fact............................................................17

        A.    Courts have denied summary judgment in similar "natural" cases based on evidence that Plaintiffs have met or exceeded here....................................................17

        B.    Judge Buchwald selectively viewed the evidentiary record and made clearly erroneous assessments—consistently unfavorable to the non-moving parties—to negate any meaning of the term "All Natural." .........................20

        C.    A precise definition of "All Natural" is not required for the claim to be false and misleading.............................24

        D.    The record evidence supporting Dr. Toutov's opinions independently raises jury questions even if he remains excluded. ....................................................28

E.    Judge Buchwald did not consider KIND's admissions that its products are not "All Natural." ............................................31

II.    Judge Buchwald Abused Her Discretion in Retreating from Judge Pauley's Class Certification Order, Where Nothing of Substance Had Changed Since Judge Pauley Certified the Classes, and Where Judge Buchwald's About-Face on the Predominance Issue Was Erroneous. ...................................................33

A.    Judge Buchwald's decertification decision misapplied Judge Pauley's order granting class certification. ....................33

B.    Judge Buchwald abused her discretion in departing from Judge Pauley's law of the case....................................................36

III.    In Order to Reach Her Dismissal Outcome, Judge Buchwald Abused Her Discretion in Excluding Plaintiffs' Expert Witnesses. ............................................................................40

A.    This Court must reverse exclusion rulings based on errors of law or clearly erroneous factual findings, especially where the lower court assessed sufficiency rather than admissibility. ..............................................................40

B.    Just as numerous federal courts have previously found, Dr. Dennis's methodology is analytically sound, and Judge Buchwald's quibbles with his survey go to the weight of his testimony, not its admissibility. ..........................................42

C.    Dr. Toutov's expert opinions are relevant and should be admissible for a jury's consideration. .......................................49

1.    Dr. Toutov's opinions are consistent with and relevant to prevailing consumer perceptions of "natural" food labeling. ..................................................52

2.    Judge Buchwald reached erroneous conclusions regarding consumer perceptions of vitamin labeling statements to avoid Dr. Toutov's undisputed finding of synthetic ingredients in certain KIND products.........53

3.    Dr. Toutov's conclusions that all 39 of the challenged KIND products contain unnatural ingredients are based on evidence from KIND regarding the actual ingredients used in those products...........................................................................55

CONCLUSION ...........................................................................................60

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                              <u>Page(s)</u>

*Abrams v. Interco Inc.*,
   719 F.2d 23 (2d Cir. 1983) ............................. 15

*Ackerman v. Coca-Cola Co.*,
   No. 09-395, 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010) ............................... 25

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*,
   No. 17-2614, 2022 WL 4621431 (S.D.N.Y. Sep. 30, 2022) ...................... 38, 39

*Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*,
   611 F. Supp. 2d 373 (S.D.N.Y. 2009) .............................................. 37

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004) ............................. 14

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ....................................... 41, 50

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................... 15, 16

*Aramony v. United Way of Am.*,
   254 F.3d 403 (2d Cir. 2001) ............................. 36

*Arizona v. California*,
   460 U.S. 605 (1983) ........................................ 36

*Berger v. MFI Holding Corporation*,
   No. 17-6728, 2019 WL 10528306 (E.D.N.Y. Apr. 3, 2019) ........................... 25

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ............................... 50

*Boyce v. Soundview Tech. Group, Inc.*,
   464 F.3d 376 (2d Cir. 2006) ....................................... 16, 40

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) ..................................... 17, 18, 29, 45

*Briseno v. Conagra Foods, Inc.*,
   674 F. App'x 654 (9th Cir. 2017) ..................................... 21

iv

*Brueswitz v. Wyeth, LLC*,
    562 U.S. 223 (2011) ........................................ 35

*Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*,
    769 F. Supp. 2d 269 (S.D.N.Y. 2011) .............. 42

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ....................................... 37

*Christophersen v. Allied–Signal Corp.*,
    902 F.2d 362 (5th Cir. 1990) ........................... 44

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) .............. 25

*Coty Inc. v. Excell Brands, LLC*,
    277 F. Supp. 3d 425 (S.D.N.Y. 2017) .............. 43

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10-8086, 2012 WL 6217646 (S.D.N.Y. Dec. 3, 2012) ............... 38

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................... 42, 44

*Donahue v. Pendleton Woolen Mills, Inc.*,
    No. 84-7149, 1988 WL 36317 (S.D.N.Y. Apr. 13, 1988) ............... 39

*Fero v. Excellus Health Plan, Inc.*,
    502 F. Supp. 3d 724 (W.D.N.Y. 2020) ............. 42

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ...................... 27, 28

*Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*,
    221 F. Supp. 2d 457 (S.D.N.Y. 2002) .............. 43

*Grand River Enters. Six Nations, Ltd. v. King*,
    783 F. Supp. 2d 516 (S.D.N.Y. 2011) .............. 42

*Hairston v. S. Beach Beverage Co., Inc.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ........... 54

*Harley Davidson, Inc. v. Grottanelli*,
    164 F.3d 806 (2d Cir. 1999) ....................... 27, 29

*In re Gen. Motors LLC Ignition Switch Litig.,*
  No. 14-8317, 2017 WL 2664199 (S.D.N.Y. June 20, 2017) ........................... 44

*In re Joint E. & S. Dist. Asbestos Litig.,*
  52 F.3d 1124 (2d Cir. 1995) .................................................... *Passim*

*In re M/V MSC Flaminia,*
  No. 12-8892, 2017 WL 3208598 (S.D.N.Y. July 28, 2017) ............................ 40

*In re Scotts EZ Seed Litig.,*
  No. 12-4727, 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ............................. 44

*In re Scrap Metal Antitrust Litig.,*
  527 F.3d 517 (6th Cir. 2008) ..................................................... 50

*Johnson v. Holder,*
  564 F.3d 95 (2d Cir. 2009) ....................................................... 37

*Johnson v. Nextel Commc'ns Inc.,*
  780 F.3d 128 (2d Cir. 2015) .................................................. 15, 33

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) .............................................................. 42

*Langan v. Johnson & Johnson Consumer Cos.,*
  No.13-1470, 2017 WL 985640 (D. Conn. Mar. 13, 2017) ......................... 18, 29

*Laumann v. Nat'l Hockey League,*
  105 F. Supp. 3d 384 (S.D.N.Y. 2015) ............................................. 39

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.,*
  397 F.3d 77 (2d Cir. 2005) ....................................................... 38

*Mantikas v. Kellogg Co.,*
  910 F.3d 633 (2d Cir. 2018) .................................................. 24, 25

*McCullock v. HB Fuller Co.,*
  61 F. 3d 1038 (2d Cir. 1995) ......................................... 24, 49, 50, 60

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
  715 F.3d 102 (2d Cir. 2013) ......................................... 14, 15, 22, 24

*Morales v. Kraft Foods Group, Inc.,*
  No. 14-4387, 2016 WL 11743532 (C.D. Cal. Dec. 2, 2016) ..................... 17, 29

*N.Y. Legal Assistance Grp. v. Bd. of Immigration Appeals*,
  987 F.3d 207 (2d Cir. 2021) .............................................................. 35

*Naimoli v. Ocwen Loan Servicing, LLC*,
  22 F.4th 376 (2d Cir. 2022) .............................................................. 14

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) .............................................................. 42

*Olin Corp. v. Lamorak Ins. Co.*,
  332 F. Supp. 3d 818 (S.D.N.Y. 2018) ................................................ 38

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) ................................................................ 22

*Park West Radiology v. CareCore Nat'l LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009) ................................................ 42

*Peyser v. Searle Blatt & Co., Ltd.*,
  No. 99--10785, 2004 WL 307300 (S.D.N.Y. Feb. 17, 2004) .............. 38

*Pipitone v. Biomatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002) ............................................................ 16

*Playtex Prod., Inc. v. Procter & Gamble Co.*,
  No. 02-8046, 2003 WL 21242769 (S.D.N.Y. May 28, 2003) ........ 42, 43

*Prisco v. A & D Carting Corp.*,
  168 F.3d 593 (2d Cir. 1999) ........................................................ 36, 37

*Qube Films Ltd. v. Padell*,
  No. 13-cv-8405, 2016 WL 888791 (S.D.N.Y. Mar. 1, 2016) ............ 40

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017) .................................................. 16, 50, 60

*Riegel v. Medtronic, Inc.*,
  451 F.3d 104 (2d Cir. 2006) .................................................. 42, 44, 47

*Rise-N-Shine, LLC v. Duner-Fenter*,
  No. 14-1305, 2015 WL 876470 (S.D.N.Y. Feb. 28, 2015) ................ 43

*Sarkees v. E. I. Dupont De Nemours & Co.*,
  15 F.4th 584 (2d Cir. 2021) .......................................................... 15, 16

*Schaeffler v. United States*,
806 F.3d 34 (2d Cir. 2015) ................................................................. 40

*Schering Corp. v. Pfizer Inc.*,
189 F.3d 218 (2d Cir. 1999) ........................................................ 42, 49

*Sec. Litig. Teachers' Ret. Sys. of La. v. Pfizer, Inc.*,
819 F.3d 642 (2d Cir. 2016) ........................................................ 49, 41

*Silva v. Hornell Brewing Co.*,
No. 20-756, 2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020) ............................. 26

*Sims v. Blot*,
534 F.3d 117 (2d Cir. 2008) ........................................................ 15, 33

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
746 F.2d 112 (2d Cir. 1984) ............................................................. 48

*Surgicenters of Am., Inc. v. Med. Dental 12 Surgeries, Co.*,
601 F.2d 1011 (9th Cir. 1979) ............................................... 29, 30, 31

*U.S. v. Birney*,
686 F.2d 102 (2d Cir. 1982) ............................................................. 37

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002) ........................................................... 37

*Valador, Inc. v. HTC Corp.*,
242 F. Supp. 3d 448 (E.D. Va.) .................................................... 48, 49

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
No. 07-5804, 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ............................... 44

*Waverly Props. LLC v. KMG Waverly*,
No. 09-3940, 2011 WL 13322667 (S.D.N.Y. Dec. 19, 2011) .......................... 38

*Ybarra v. Illinois*,
444 U.S. 85, 100 S. Ct. 338 (1979) .................................................... 35

## Statutes & Rules

28 U.S.C. § 1291 ........................................................................ 5

28 U.S.C. § 1332 ........................................................................ 5

58 Fed. Reg. 2302 (Jan. 6, 1993) ........................................................... 18

58 Fed. Reg. 2407 (Jan. 6, 1993) ........................................................... 18

80 Fed. Reg. 69,905, ............................................................................. 32

80 Fed. Reg. 69,907 .............................................................................. 32

Federal Rule of Evidence Rule 701 ......................................................... 4

Federal Rule of Evidence Rule 702 .................................... 41, 42, 43, 45

Federal Rule of Civil Procedure Rule 23 ........................................... 8, 9

## **Other**

359. The Reference Guide on Survey Research,
    2011 WL 7724258 ............................................................................... 48

# **INTRODUCTION**

This appeal is about much more than just granola bars. It is about whether a corporation can outright *lie* to its consumers, misleading them into ingesting things they are deliberately trying to avoid. Few things are more intimate and important to a person than what they choose to eat. Just as some people eat only certain types of food based on their religious beliefs—and will pay extra for the assurance that their food complies with those strictures—some Americans choose to eat, and will pay a premium for, food that is natural.

Here, Appellee KIND LLC ("KIND") falsely told consumers that its food products were not just natural, but indeed were "All Natural." All the while, KIND knew that these products contained synthetic and artificial ingredients—i.e., the antithesis of natural. KIND has *conceded* that some ingredients at issue are indeed synthetic. Had KIND told its consumers the truth—that its products were, at best, only "partially natural"—its sales would have been harmed. Instead, KIND chose to deceive.

On March 24, 2021, the Honorable William H. Pauley III recognized all this and certified several classes consisting of millions of consumers, under the state laws of New York, California, and Florida, where consumers made their purchases. Judge Pauley's well-reasoned order did not give Plaintiffs everything they sought, but his order recognized two fundamental realities: (1) that class certification was proper

1

because KIND acted uniformly with respect to each member of the classes; and (2) that a reasonable consumer does not expect a food product labeled "All Natural" to contain things that are unnatural. As Judge Pauley aptly noted:

> This consumer class action spins a familiar tale. A large company produces similar products with different labels. Should employing slightly different labels allow a company to escape liability? … If this Court declined to certify the proposed classes, consumer-product companies would have a roadmap to avoid class actions. And given the relative low cost of most consumer products, those companies could avoid any liability for deceptive labeling.

JA-1151.

The implications of Judge Pauley's ruling extend far beyond just food labeling. If manufacturers and marketers of food products can deliberately and materially deceive their consumers about their products' contents—all to boost sales and profits—so too can auto manufacturers ("Made in the U.S.A."), clothing manufacturers ("Made from 100% cotton"), and countless other makers and sellers of consumer products. Judge Pauley's ruling recognized that all KIND had to do to avoid liability was tell the consumers the truth, thereby allowing the consumers to make a truly informed choice about what they buy and put into their bodies.

However, after Judge Pauley's passing, the Honorable Naomi Reice Buchwald inherited the case and reversed Judge Pauley's well-supported conclusions. Whereas Judge Pauley's class certification order looked to an ordinary dictionary definition of the word "natural" as "existing in or caused by nature; not

2

made or caused by humankind," JA-1146 (quoting New Oxford American Dictionary 1167 (3d ed. 2010)), Judge Buchwald's dismissal order reversed course and concluded that no jury trial was appropriate, and that the entire case should be dismissed on summary judgment because, in her view, "no objective definition of 'All Natural' exists." SPA-23 (capital letters altered for clarity).

Judge Buchwald abused her discretion in decertifying the classes previously certified by Judge Pauley, and her decision to do so was based on erroneous conclusions of law. The essence of the class claims remained exactly what they were when Judge Pauley certified them just a year earlier, as did the nature of the requisite class-wide proof. Contrary to Judge Buchwald's assertion, Plaintiffs' common proof was not "only" the connection between "all natural" and "non-GMO," *see* SPA-46-47, so her conclusion about predominance was wrong and a departure from the law of the case.

Judge Buchwald also abused her discretion by excluding the expert testimony of two of Plaintiffs' experts, Dr. J. Michael Dennis and Dr. Anton Toutov. Judge Buchwald held that Plaintiffs "must rely" on Dr. Dennis' testimony about his consumer perception survey to establish a reasonable consumer's understanding of "all natural[,]" SPA-25, but that his opinion had to be excluded because his inquiry into the meaning of "all natural" to consumers was "limited" to Plaintiffs' theory of

liability, not "open-ended" to facilitate every possible understanding of that term. SPA-31-32. This analysis was seriously flawed.

First, no expert opinion was required to establish that, to a reasonable consumer, something that is synthetic, artificial, or bioengineered is not "All Natural." As Judge Pauley correctly reasoned, all it takes is reference to a standard dictionary and common sense. Just as Bob Dylan once wrote "You don't need a weatherman to know which way the wind blows" (B. Dylan, *Subterranean Homesick Blues* (1965)), the Federal Rules of Evidence make clear that not every fact question requires reference to an expert's testimony. Fed. R. Evid. 701(c) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702). However, Judge Buchwald erroneously granted summary judgment against Plaintiffs on the grounds that such expert testimony was necessary.

Even assuming *arguendo* that Dr. Dennis's opinions were essential, there was nothing about his methodology that required exclusion of his opinions. Judge Buchwald simply decided to "re-write" his survey methods and fault him for not performing the survey in the exact manner she preferred. But that is not the proper standard for inquiry under *Daubert* and its progeny.

4

Similar problems are evident in Judge Buchwald's exclusion of Dr. Toutov's expert opinions. Among other things, Judge Buchwald took issue with Dr. Toutov's testimony about consumer perceptions because, in her view, Dr. Toutov "disagreed" with Dr. Dennis's "definitions[.]" SPA-42. Essentially, she found the testimony of the two experts to be internally contradictory, and thus both inadmissible. But a careful reading of their testimony reveals no inconsistency; Dr. Toutov described a scientific approach to "naturalness" that was perfectly compatible with the body of literature on consumer perceptions of the same term.

In short, Judge Pauley was right, and Judge Buchwald erred in retreating from his well-reasoned rulings to grant summary judgment. The matter should be reversed for trial.

## JURISDICTIONAL STATEMENT

This is an appeal from a district court's final judgment in a civil case. The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). A final order disposing of all claims was entered on September 12, 2022. SPA-48. A notice of appeal was timely filed on October 7, 2022. JA-2715. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.     Did the district court err in ruling that no genuine dispute as to any material fact exists as to whether KIND's products—some of which KIND

undisputedly contained synthetic ingredients—were not "All Natural" and that the products' labels were deceptive and misleading?

2.  Did the district court abuse its discretion in decertifying the classes based on erroneous conclusions of law or clearly erroneous factual findings?

3.  Did the district court abuse its discretion in excluding the expert opinions of Dr. J. Michael Dennis?

4.  Did the district court abuse its discretion in excluding the expert opinions of Dr. Anton Toutov?

## STATEMENT OF THE CASE

### I.  MDL Centralization and Stay

This multidistrict litigation has been pending in the Southern District of New York since JPML centralization on August 10, 2015. JA-13. On November 13, 2015, Judge Pauley appointed the three undersigned firms as interim co-lead counsel for Plaintiffs and the putative class. JA-18. Plaintiffs filed a consolidated complaint on December 15, 2015, which was amended on October 31, 2016, JA-19, JA-70, asserting claims related to KIND's labeling of snack products as "All Natural" and "Non GMO":





On March 2, 2018, Judge Pauley denied KIND's motion to dismiss but stayed the MDL pending a potential forthcoming decision by the FDA to establish a regulatory definition of "natural" for food labeling. JA-27-28. On February 11, 2019, after the FDA had not established such a definition, Judge Pauley granted Plaintiffs'

motion to lift the stay. JA-29. On January 17, 2020, Plaintiffs moved to certify New York, California, and Florida classes based on KIND's "All Natural" and "non-GMO" labeling statements (the "Class Motion"). JA-33. On July 2, 2020, after briefing was completed, Judge Pauley heard oral argument on the Class Motion and took it under submission. JA-37.

## II.   Judge Pauley Grants Class Certification

On March 24, 2021, Judge Pauley largely granted the Class Motion, certifying New York, California, and Florida classes as to both labeling statements under Rule 23(b)(3). JA-1125 ("Class Order"). Judge Pauley held that "there are questions common to the class capable of resolution through common proof," including whether the class paid a premium based on their mistaken belief that 39 of KIND's products ("Products") were "All Natural" and "Non-GMO." JA-1135.

In analyzing the predominance requirement under Rule 23(b)(3), Judge Pauley noted that the term "natural" can be defined as "existing in or caused by nature; not made or caused by humankind." JA-1146 (quoting New Oxford American Dictionary 1167 (3d ed. 2010)) (internal quotation marks omitted). Judge Pauley also held that "while there is variance in the labels at issue, common questions as to whether these labels are deceptive predominate," and that materiality could be determined on a class-wide basis. JA-1147.

Importantly, Judge Pauley held that the "product specific labeling and packaging claims do not require proof as to individual understandings and can be judged based on an objective standard." JA-1148. Judge Pauley rejected KIND's argument that Plaintiffs did not have a "unified theory" as to the meaning of "all natural," finding that Plaintiffs' pleaded definitions of "natural" were not contradictory or exclusive of one another. JA-1151. Judge Pauley also raised "important policy considerations" in rejecting KIND's argument that label variations over time precluded certification, indicating that such a finding would provide "consumer-product companies [with] a roadmap to avoid class actions" through strategic labeling changes. *Id.*

Finally, Judge Pauley held KIND's "All Natural" claim is "absolute" such that if any of the Products contain "a single non-natural … ingredient, the label is incorrect." JA-1152 ("Thus, if Plaintiffs identify one ingredient that a jury finds to be non-natural, they may be entitled to damages. . . . As long as each product has at least one non-natural ingredient, that determination answers the question for all members of the putative class.").

## III.  Judge Pauley's Passing and Transfer of Case to Judge Buchwald

After certifying the classes, Judge Pauley entered a scheduling order on May 26, 2021. JA-38-39. After Judge Pauley's untimely passing in July 2021, the case was reassigned to Judge Buchwald. JA-39. In August 2021, Judge Buchwald granted

9

Plaintiffs' consent motion to approve their class notice plan. JA-40. On January 5, 2022, she held her only hearing in the case, issuing an oral ruling after argument on the parties' discovery disputes. JA-41. Through discovery and exchanging expert reports, Plaintiffs indicated they would no longer be pursuing claims related to KIND's "non-GMO" labeling—only the "All Natural" labeling. *See* JA-1502-03 ¶¶ 16-20.

On January 21, 2022, KIND filed motions for summary judgment, to decertify the classes, and to exclude all three of Plaintiffs' experts.[1] JA-41-43. On March 4, 2022, Plaintiffs filed oppositions to KIND's motions, as well as motions to exclude both of KIND's experts.[2] JA-45-49. Briefing on these cross-motions was completed by April 29, 2022. JA-49-51.

## IV.  Judge Buchwald Grants Summary Judgment and Decertifies the Classes

Roughly four months after the parties' briefing was complete, and without any hearing on their seven pending motions, Judge Buchwald issued an order granting

---

[1] Plaintiffs put forward Dr. Stephen Hamilton for damages, Dr. J. Michael Dennis for materiality, and Dr. Anton Toutov for the falsity of KIND's "all natural" labeling.
[2] KIND put forward Dr. Ran Kivetz to rebut Plaintiffs' damages and materiality experts, and Dr. Catherine Adams Hutt to rebut Dr. Toutov.

KIND's motions for summary judgment, excluding the expert opinions of Dr. Dennis and Dr. Toutov, and decertifying the classes.[3] SPA-1 ("Buchwald Order").

In a stark departure from Judge Pauley's reasoning at class certification, Judge Buchwald held that Plaintiffs failed to demonstrate that a reasonable consumer would find KIND's "all natural" labeling to be deceptive or misleading, largely because she found that "no objective definition of 'all natural' exists." SPA-23-25. Relying on an excerpt from Judge Pauley's Class Order to find that Plaintiffs' abandonment of the "non-GMO" labeling claim stripped the weight of his predominance ruling, *see* SPA-21 (citing JA-1146-47), Judge Buchwald omitted Judge Pauley's subsequent discussion and his acceptance of Plaintiffs' well-pled definitions of "natural," most of which do not even involve GMO ingredients, instead focusing on a lack of artificial or synthetic ingredients as a key to naturalness.[4] *See* JA-1150-51.

Rather than holding that a jury *could* determine whether a reasonable consumer would find KIND's labeling deceptive, Judge Buchwald concluded that the meaning of "all natural" on food labels was diverse and that the definitions on which Judge Pauley relied are "not all coextensive." SPA-24-25. Judge Buchwald

---

[3] Judge Buchwald denied as moot all other pending motions, including KIND's motion to exclude Dr. Hamilton's damages opinion, finding that the exclusions of Dr. Dennis and Dr. Toutov were dispositive to Plaintiffs' claims. SPA-47 at n.30.

[4] An important distinction that is consistent with the expert opinions of both Dr. Dennis and Dr. Toutov. JA-1530-32 ¶¶ 95–101; SA-280-91 ¶¶ 14–35.

thus found that Plaintiffs "must rely on the testimony" of Dr. Dennis and his consumer perception survey to establish a reasonable consumer's understanding of "all natural." SPA-25.

Judge Buchwald then excluded Dr. Dennis's survey because it was not "open-ended" to facilitate every possible understanding of the label, and did not include a "Non GMO" statement next to the "All Natural" statement as it appeared on KIND's products. SPA-31-32. Judge Buchwald further held that the use of the term "chemicals" created a "leading effect" that manipulated survey respondents. SPA-33-34. Judge Buchwald's order presented mock jury instructions tracking Dr. Dennis's survey questions, as well as Dr. Toutov's standards for naturalness, in concluding that those questions are "central" to Plaintiffs' theory of liability yet somehow must be "guessed" by the factfinder. SPA-35.

Judge Buchwald excluded Dr. Toutov as well, finding his opinions irrelevant for two reasons. First, a lone deposition response indicating he did not consider consumer perception in forming his opinions, which is belied by his actual expert report. SPA-41-42; SA-288-89 ¶ 29. Second, Dr. Toutov's references to "typical" sources and processing for the ingredients at issue, rather than the actual processes and sourcing that KIND used—even though his report did provide actual sourcing and processing evidence from KIND. SPA-43-44; *see* SA-302-03 ¶ 55, ███████ ████████████████████████ SA-306-07 ¶ 61 █████████████

12



SA-312 ¶ 71 (KIND's use of alkalized cocoa powder), SA-316-18

¶¶ 77–79 ████████████████████ SA-321 ¶ 84 ███████

███████████████████████████ SA-324-25 ¶ 90 ████████

██████████████████████ SA-334-35 ¶ 109 ████████████

█████████████████████ SA-340-41 ¶ 121 █████████████

██████ SA-343 ¶ 126 ████████████████████

Finally, Judge Buchwald decertified the classes, holding that the only "common proof" warranting Judge Pauley's certification of the classes was the connection between "All Natural" and "Non-GMO" appearing next to each other on KIND's labels. SPA-46 (quoting JA-1147). Judge Buchwald clearly erred on this critical point: Judge Pauley did not find the labeling statements to be interdependent and certified consumers' "All Natural" claims independent of his certification of the "Non-GMO" claims. JA-1152.

## SUMMARY OF ARGUMENT

The district court's summary judgment decision was based on errors of law and clearly erroneous evidentiary findings, warranting reversal. These conclusions of law and fact were erroneous because the district court placed inordinate weight on, and drew inferences against Plaintiffs from, non-expert evidence that comported with its ultimate conclusion, while ignoring and giving no weight to contradictory evidence clearly favorable to Plaintiffs, the non-moving parties.

13

The district court abused its discretion by decertifying the classes because it similarly based that decision on erroneous legal and factual findings. It unnecessarily and prejudicially disregarded the law of the case at a stage of the case where discovery was already closed. Finally, the district court abused its discretion in excluding two of Plaintiffs' experts by improperly adjudicating the sufficiency of their expert opinions while again drawing inferences and weighing evidence unfavorably to the non-moving parties. At best, any quibbles the district court had with Plaintiffs' experts' opinions go to the weight a jury should place on those opinions when assessing the parties' "battle of the experts," not to admissibility.

The district court's order granting summary judgment, excluding the expert opinions of Dr. Dennis and Dr. Toutov, and decertifying the classes should be reversed and remanded for a jury trial.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 381 (2d Cir. 2022). At summary judgment, a district court is to determine whether there are genuine issues of fact for trial, "not to weigh the evidence but … instead … view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (citation omitted); *see also Mihalik v. Credit*

14

*Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court has instructed district courts not to attempt to weigh evidence themselves, and to refrain from asking "whether there is some dispute about the validity or force of a given study," and instead to ask, "whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1133 (2d Cir. 1995).

Class certification decisions are reviewed under an "abuse of discretion" standard, but a district court's conclusions of law and evidentiary findings informing the decision are reviewed *de novo*. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *Abrams v. Interco Inc.*, 719 F.2d 23, 28 (2d Cir. 1983) ("[R]eview of class action determinations for 'abuse of discretion' does not differ greatly from review for error."). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (quotations and alterations omitted).

The exclusion of evidence from an expert witness is reviewed "for abuse of discretion, bearing in mind that such abuse occurs when a judge's discretionary ruling is based on an error of law." *Sarkees v. E. I. Dupont De Nemours & Co.*, 15

15

F.4th 584, 588 (2d Cir. 2021) (internal citation omitted). This Court's review of rulings on the admissibility of expert testimony is typically described as abuse of discretion, *see Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017), but this Court nonetheless reviews *de novo* conclusions of law and any application of the law to the facts. *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (quotation omitted).

When interpreting the Federal Rules of Evidence, the Seventh Amendment right to jury trial in civil cases requires that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. A plaintiff's right to have a jury perform these functions is why courts resolve doubts about summary judgment in favor of sending the case to trial. *Id.* It is also why courts must resolve doubts about expert testimony in favor of admissibility; otherwise, courts could do to cases under the guise of "gatekeeper" what the Constitution forbids them to do as judge. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[A] trial court must take care not to transform a Daubert hearing into a trial on the merits.").

## ARGUMENT

I.  **Judge Buchwald Erroneously Granted Summary Judgment by Improperly Weighing Evidence and Erroneously Concluding that Expert Testimony Was Required to Establish a Genuine Issue of Fact.**

    A.  **Courts have denied summary judgment in similar "natural" cases based on evidence that Plaintiffs have met or exceeded here.**

In *Morales v. Kraft Foods Group, Inc.*, No. 14-cv-4387, 2016 WL 11743532 (C.D. Cal. Dec. 2, 2016), the court denied defendant's motion for summary judgment where the plaintiff did not present any consumer survey but did present admissible evidence that a reasonable consumer is likely to be deceived by the term "natural cheese." The evidence included: (1) the testimony of the named plaintiffs; (2) internal Kraft documents suggesting that Kraft knew customers associated the term "natural cheese" with natural ingredients; and (3) FDA guidance stating that products with artificial coloring, regardless of source, cannot be labeled "natural." *Id.* at *14. The *Morales* court held this evidence alone was sufficient to show triable issues, including on consumer perception of whether certain ingredients were "artificial" and whether that perception was material to consumers' purchasing decisions. *Id.* at *21.

Similarly, in *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016), the Ninth Circuit court reversed the district court's grant of defendant's summary judgment motion as to whether its "all natural fruit" label was misleading

17

because the product contained synthetic citric and ascorbic acid. *Id.* at 533. As evidence the label was materially misleading, plaintiff presented: the label itself; his own testimony that he was deceived; defendant's consumer surveys prepared for the litigation; the FDA's informal, non-binding policy on use of the word "natural" in food labels;[5] and more recent FDA warning letters to companies who labeled foods "all natural" that contained synthetic ingredients, like citric acid. *Id.* The Ninth Circuit held that, "[t]aken together, this evidence could allow a trier of fact to conclude that Dole's description of its products as 'All Natural Fruit' is misleading to a reasonable consumer." *Id.* This evidence, along with conflicting expert reports "could also allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.'" *Id.* at 534.

In *Langan v. Johnson & Johnson Consumer Cos.*, No. 13-cv-1470, 2017 WL 985640, at *5-10 (D. Conn. Mar. 13, 2017), *vacated and remanded on other grounds*, 897 F.3d 88 (2d Cir. 2018), the court denied summary judgment of "100% naturally sourced sunscreen ingredients," "natural protection," and "Natural Oat

---

[5] In 1993, the FDA informally defined "natural" to mean "that nothing artificial or synthetic … has been included in, or has been added to, a food that would not normally be expected to be in the food." Food & Drug Admin., *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

Formula" claims, finding plaintiffs' reliance solely on defendant's internal documents was sufficient evidence for the claim to survive.

Thus, surveys are not required to establish consumer understanding of a relevant term, but they can be relevant here, and Judge Buchwald ignored the fact that consumer surveys produced by KIND also were part of the record and did not evaluate or give them any weight. *See, e.g.*, SA-427 █████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

Plaintiffs' non-expert evidence is more than sufficient for a trier of fact to conclude that KIND's Products are not "All Natural." Plaintiffs' pled definitions and deposition testimony, along with the scientific literature and existing consumer surveys in the record, amount to evidence that mirrors—if not exceeds—that which was deemed sufficient for the *Morales*, *Brazil*, and *Langan* plaintiffs to defeat summary judgment. And, most significantly, KIND conceded that products at issue contain synthetic ingredients and internally admitted it ███████████████

████ on those products. *See, e.g.*, SA-1203 (glucose syrup sourced by KIND███

████████████████████████████████████ SA-426 ████

███████████████████████████████████████████

19

███████████████ *see also infra* Section I.D. This evidence was ignored by Judge Buchwald.

While, Judge Buchwald may have found this evidence unpersuasive, she committed reversible error by weighing conflicting evidence and reaching a conclusion that was properly within the purview of a jury.

> ### B. Judge Buchwald selectively viewed the evidentiary record and made clearly erroneous assessments—consistently unfavorable to the non-moving parties—to negate any meaning of the term "All Natural."

Judge Buchwald reached multiple conclusions of law based on erroneous factual determinations that selectively stripped Plaintiffs' ability to establish materiality while omitting any discussion of evidence favorable to Plaintiffs.

First, the district court incorrectly held that Plaintiffs can no longer premise their claims regarding KIND's "all natural" label, in any way, on the "Non GMO" label, because Plaintiffs "abandoned all allegations" regarding that "Non GMO" label. SPA-21. Not So.

While Plaintiffs are no longer pursuing their allegations based on the "Non GMO" label being false and misleading, independently from their claims regarding the "All Natural" label, the presence of GMOs in a product nonetheless renders an "All Natural" label false and misleading. SA-290 ¶¶ 31-32.

The lower court's analysis suggesting that "All Natural" *needs* to be linked to "Non GMO" to have meaning, that the presence of GMOs in the product is the *only*

way "All Natural" could be misleading, is illogical and incorrect. "All Natural" can also be false and misleading due to the presence of GMOs even in the absence of any "Non-GMO" claim on the label. *See Briseno v. Conagra Foods, Inc*., 674 F. App'x 654, 655-56 (9th Cir. 2017). Thus, the court's conclusion that, having abandoned their claims based on the "Non-GMO" label, Plaintiffs cannot establish that the "All Natural" label is false and misleading, is clearly erroneous. SPA-21-22.

Judge Buchwald then made a dubious factual determination concerning the meaning of the "slash" separating the "All Natural" statement from the "Non GMO" statement on KIND's label, initially concluding the symbol "commonly indicates 'and or,'" and then that it means "in other words." SPA-22. This factual determination was made with no supporting evidence of any kind—even KIND did not advance this argument. Yet, this conclusion provides the sole basis for the court's conclusion that the two labeling statements are synonymous. *Id.*

Judge Buchwald went on to find: "This depiction plausibly indicates to a consumer that the claims are related, and potentially that the KIND product is 'All Natural, in other words, Non GMO.'" SA-22. Yet consumers and KIND itself have recognized that whether a product is "All Natural" depends on more than just the absence of GMOs. *See, e.g.*, SA-427 █████████████████████████

███████████████████████████████████████████████████████

21

███████████████████████████████████████

████████████████████████████████

The district court's unwarranted and unsupported interpretation of the slash between "All Natural" and "Non GMO" exemplifies its failure to "constru[e] the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor." *Mihalik*, 715 F.3d at 108; *see also id.* at 105 ("all conflicts in the evidence resolved and all reasonable inferences drawn" in favor of the non-moving party); *Papelino v. Albany Coll. of Pharmacy of Union Univ*., 633 F.3d 81, 85 n.1 (2d Cir. 2011) (court must "construe the evidence in the light most favorable to" the non-moving party and "draw all reasonable inferences and resolve all conflicts and ambiguities in favor of" the non-moving party); *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1137 (same).

Even accepting the district court's statement, one plausible interpretation does not foreclose the possibility that many consumers held a different, but equally plausible, view—i.e., that the claims on the label had separate and distinct meanings. Nevertheless, in search of evidence to support its own preferred interpretation, the court cited Plaintiff Bustamante's statement in her deposition that "that an 'All Natural' product is one 'without GMO ingredients' that would be 'good for' her" as evidence that she "saw the claims as related." SPA22. But Ms. Bustamante's statement shows exactly the opposite: She did not say that an "All Natural / Non-

GMO" product is one without GMO ingredients. She interpreted the "All Natural" claim *in isolation* to mean that the product contained no GMOs, thus demonstrating that she saw "All Natural" as a claim standing on its own. JA-486 at 130:5–20. Moreover, her belief that "All Natural" meant non-GMO does not preclude the possibility that she also believed "All Natural" to mean no synthetic or artificial ingredients. Yet Judge Buchwald improperly drew an inference from Ms. Bustamante's testimony that she then relied on in granting summary judgment.

Judge Buchwald also improperly characterized Plaintiffs' testimony as a "diversity of views." SPA-25. But it does not matter whether Plaintiffs' perceptions of "natural" are all consistent; the only issue before the court on summary judgment was whether their testimony precluded a finding that there was an issue of fact as to whether a reasonable consumer might be misled by an "All Natural" label where the product contains synthetic, heavily processed, or bioengineered ingredients. It did not.

Indeed, a closer look at Plaintiffs' testimony shows consistency. Particularly when viewed in conjunction with Dr. Toutov's framework and the underlying regulations and literature on which it was built. *See infra* Section III.C. The testimony of Plaintiffs Short ("made from whole nuts, fruits, and whole grains") and Livingston ("pull[ed] out of the Earth" or "untouched") comport precisely with what Dr. Toutov found in consumer perception studies to be a prevalent understanding of

23

natural foods as those that are "minimally processed," and both satisfy his second element of naturalness. JA-427-28 at 53:9–54-7; JA-344 at 68:15–18; SA 288-91 ¶¶ 29, 33.

Similarly, the testimony of Plaintiffs Thomas ("the ingredients were not synthetic, not chemicals") and Bustamante (no GMO ingredients) vary but comport with Dr. Toutov's first element of naturalness, that ingredients are not derived from synthetic, artificial, or bio-engineered sources. JA-410 at 175:5-10; JA-486 at 130:5–20; SA-290 ¶ 32. Judge Buchwald failed to interpret this evidence in the light most favorable to Plaintiffs, the non-moving party, *Mihalik*, 715 F.3d at 105, and violated this Court's instruction not to "evaluate witness credibility and weight of the evidence," which usurped "the ageless role of the jury." *McCullock v. HB Fuller Co.*, 61 F. 3d 1038, 1045 (2d Cir. 1995).

### C. A precise definition of "All Natural" is not required for the claim to be false and misleading.

There is perhaps no more egregious error in Judge Buchwald's decision than her statement that KIND cannot "be held responsible for a host of possible, even if potentially reasonable, consumer beliefs about the meaning of 'All Natural.'" SPA-38. That is precisely what the laws at issue require.

In *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), the Second Circuit vacated the district court's dismissal of the plaintiffs New York and California consumer protection law claims based on that court's conclusion that the claims were

24

literally true and therefore not deceptive. The issue was not whether the claims were true, but whether they were misleading to a reasonable consumer, making them believe claims that were in fact untrue. *Id.* at 634; *see also Berger v. MFI Holding Corporation*, No. 17-cv-6728, 2019 WL 10528306, at *2-4 (E.D.N.Y. Apr. 3, 2019) (concluding that, under *Mantikas*, a plaintiff plausibly alleged deceptive packaging where a reasonable consumer could be misled into believing the representations on the label); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2010 WL 2925955, at *15 (E.D.N.Y. Jul. 21, 2010) (label stating "vitamins + water = what's in your hand" could lead a consumer to believe that the product contains only vitamins and water); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (use of the word "smokehouse" alongside fire-related imagery could lead a reasonable consumer to believe that the product was flavored via a smokehouse process rather than artificial smoke flavoring).

Here, the district court's statement that a precise definition of "All Natural" is required for Plaintiffs to prove their case is demonstrably contrary to the law. To defeat summary judgment, Plaintiffs were not required to offer a unified theory of the meaning of "all natural" labels but, rather, need only offer evidence that a reasonable jury *could* find that a reasonable consumer believes the presence of artificial and synthetic ingredients to be inconsistent with an "All Natural" claim. This is precisely what Judge Pauley stated when he certified the classes. JA-1147

("The operative issue on class certification is whether the <u>question</u> of materiality predominates, not whether Plaintiffs' answer is correct.") (emphasis in original). *See also Silva v. Hornell Brewing Co.*, No. 20-cv-756, 2020 WL 4586394, at *2 (E.D.N.Y. Aug. 10, 2020) ("while defining the term 'all natural' does involve technical and policy considerations, this case does not require a technical definition of 'all natural.' Instead, this case requires a determination of whether labeling the Product as 'all natural' is misleading to a reasonable consumer.") (Collecting cases). Plaintiffs easily satisfied that burden here.

In finding that Plaintiffs did not "introduce evidence demonstrating a reasonable consumer's understanding of 'All Natural,'" the district court repeatedly implied that evidence for such a showing would *necessarily* consist of a concise and singular definition. SPA-20. This reasoning is unfounded, unsupported by any other authority, and was explicitly rejected by Judge Pauley at both the motion to dismiss and class certification stages.[6] Moreover, Judge Buchwald's holding that an objective definition of "All Natural" must exist in order for it to be false and misleading on a food label, and that no such definition exists, would prevent consumers from challenging an "All Natural" in all circumstances, even the most

---

[6] JA-64 (no telling whether "definition would shed any further light on whether a reasonable consumer is deceived by the 'All Natural' food label"); JA-1135.

obviously non-natural foods, as the FDA has at present still declined to set forth such a definition.

Judge Buchwald's failure to abide by the law of the case (*see infra* Section II.B) and her usurpation of the jury's role, most apparent in her bold section heading: "No Objective Definition of 'All Natural' Exists." SPA-23. This section is devoid of any *Daubert* considerations, consisting instead of factual analysis of an FDA comment solicitation, Plaintiffs' definitions for "natural" in the operative complaint, and Plaintiffs' deposition testimony regarding the meaning of "natural." SPA-23-25. Judge Buchwald conceded Judge Pauley's holding that the five different definitions of "natural" in Plaintiffs' complaint are "not inconsistent," but then held that they are "not all coextensive." SPA-24. The exact opposite of the holding Judge Pauley reached at the motion to dismiss and class certification stages.

How could a term that Judge Pauley found to be "absolute" and worthy of common proof (JA-1135, JA-1152) suddenly be so unknowable? This Court has held, "[t]hough not conclusive, dictionary definitions of a word to denote a category of products are significant evidence of genericness because they usually reflect the public's perception of a word's meaning and its contemporary usage." *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999); *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999)

(summary judgment affirmed "dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public").

In spending three pages of her opinion declaring there is "No Objective Definition of 'All Natural,'" Judge Buchwald omitted any reference to Dr. Toutov's "elements of naturalness" and the sound body of scientific study that underpins its framework. *See infra* Section III.C. She also improperly weighed and discredited one obvious source of an "objective definition" that Judge Pauley explicitly consulted in his class certification order—an ordinary off-the-shelf dictionary. *See* JA-1146 (quoting New Oxford American Dictionary 1167 (3d ed. 2010)).

### D. The record evidence supporting Dr. Toutov's opinions independently raises jury questions even if he remains excluded.

The supporting record of government regulation and guidance and related scientific literature that underlie Dr. Toutov's criteria for whether a food is natural, demonstrate that requiring a confined, black-letter definition is unnecessary and are admissible evidence even if the exclusion of Dr. Toutov's opinion was correct. *See generally infra* Section III.C. Judge Buchwald ignored this extensive field of study of admissible evidence in her discussion of "natural" definitions, only to later declare Dr. Toutov's expert opinions wholly irrelevant based on a single deposition response. Even if Dr. Toutov *and* Dr. Dennis remain excluded, the record evidence sufficiently establishes an issue of fact as to the reasonableness of a consumer's

belief that foods containing synthetic and artificial ingredients are not "All Natural." *See, e.g.*, *Morales*, 2016 WL 11743532, at \*21; *Brazil*, 660 F. App'x at 533-34; *Langan*, 2017 WL 985640, at \*8-10.

Dr. Toutov's application of the naturalness framework closely tracks the categories in the FDA's comment solicitation that Judge Buchwald found so divergent: (1) inclusion of disqualifying ingredients (e.g., ███████████████); (2) manner of production or sourcing (e.g., ████████████████████); (3) certain agricultural practice (e.g., genetic engineering); and (4) whether it should be defined in terms of "unprocessed" foods and how that term would be defined. Judge Buchwald characterized these as a "plurality of definitions" alongside Plaintiffs' own "diversity of views" on understanding the term. SPA-23-24.

A dictionary definition is but one form of evidence to evaluate consumers' understanding, *Harley Davidson*, 164 F.3d at 810, and the evidence relied upon by Dr. Toutov in formulating his opinions is similarly acceptable and should not have been summarily rejected by Judge Buchwald. Dr. Toutov's culling of regulatory, commercial, and scientific studies on the term "natural" results in a workable framework, based on accepted and reliable scientific methodologies—appropriate for assisting a jury's decision whether KIND's "All Natural" labeling is misleading. *Surgicenters of Am., Inc. v. Med. Dental 12 Surgeries, Co.*, 601 F.2d 1011, 1013 &

n.5 (9th Cir. 1979) (affirming summary judgment determining how the public understands a term based on dictionary definitions, government publications, magazines, medical journals, newspaper articles and a television show).

Dr. Toutov's framework is divided into "elements" that need not be coextensive: to succeed in being "natural," a food ingredient must satisfy all three (origin, production/processing, and final form). SA-290-91 ¶¶ 31-35; *see infra* Section III.C. And Dr. Toutov's crucial second "element of naturalness" is consistent with consumer perception that, as academic publications and studies have shown,[7] "natural" foods are those that lack "additives, extensive processing and refining, [or] unnecessary ingredients" because consumers overwhelmingly desire "minimally processed foods." SPA-288-89 ¶ 29. Even if Dr. Toutov opinions remain excluded, the underlying scientific literature and government regulations, along with Plaintiffs' other evidence—including KIND's admissions in its own documents—provide sufficient bases for sending these triable issues to a jury.

---

[7] Ròman, S. et al., "The importance of food naturalness for consumers: Results of a systematic review." 67 TRENDS IN FOOD SCIENCE & TECHNOLOGY 44-57. Sept 2017 (https://www.sciencedirect.com/science/article/pii/S092422441730122X); *see also* Ipsos Marketing: Naturals, Version 1 (Public), 2018 (https://www.ipsos.com/sites/default/files/ct/publication/documents/2018-04/natural_food.pdf); *infra* Section III.C.

**E.    Judge Buchwald did not consider KIND's admissions that its products are not "All Natural."**

The evidentiary record includes KIND's internal studies demonstrating why consumers valued "natural" foods and that the term was a ██████████████ ████████████████████████ its products. SA-427. KIND's internal consumer surveys show ████████████████████████████████████ ███████████████████████████████████████████████ ████████████ *Id.* Internal documents also reveal admissions that KIND ████████████ ██████████████████████████████ including those at issue here, because it would have ████████████████████████████ SA-422-23.

KIND's own statements evidence its understanding of what "All Natural" means to a reasonable consumer—a hushed understanding consistent with government regulations, with which it internally admitted a failure to comply. *See* SA-289 ¶ 30 (citing various KIND documents and deposition testimony). KIND also effectively conceded, through its rebuttal expert's report, that an "All Natural" label means that the food product does not contain any artificial or synthetic ingredients. SA-355 ¶ 25 ("The [FDA] has considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there.") (quoting SA-1156).

The record also includes 2015 FDA research (during the time KIND was using the "All Natural" label) that found overwhelming majorities of consumers thought

31

the term "natural" meant the exclusion of "artificial materials or chemicals … during processing, … artificial ingredients or colors … toxic pesticides …, and … GMOs." SA-1172 (80 Fed. Reg. 69,905, 69,907)). Also absent from the district court's weighing of evidence are the numerous admissions by KIND that some of the ingredients at issue did not qualify for an "All Natural" label. SA-426 █████████ ████████████████████████████████████████████████████████████████ ████████ glucose syrup sourced by KIND ███████████████████████████ ███████████████████████ █████████████████████████████████████████ ████████████████████████████ This evidence stands on its own regardless of the admittance of Plaintiffs' experts.

A district court cannot engage in a proper summary judgment analysis—which requires affording all permissible inferences in favor of the non-movant—when it ignores damning admissions by the movant itself. Even if they stood alone as Plaintiffs *only* proof (they do not), these admissions—i.e., admissions that KIND's "All Natural" label was false—preclude entry of summary judgment.

**II.    Judge Buchwald Abused Her Discretion in Retreating from Judge Pauley's Class Certification Order, Where Nothing of Substance Had Changed Since Judge Pauley Certified the Classes, and Where Judge Buchwald's About-Face on the Predominance Issue Was Erroneous.**

### A.    Judge Buchwald's decertification decision misapplied Judge Pauley's order granting class certification.

"Although we review class certifications for abuse of discretion, we review *de novo* the district court's conclusions of law that informed its decision to certify a class." *Johnson*, 780 F.3d at 137 (internal quotation marks omitted). A district court's abuse of discretion can be based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[ing] a decision that cannot be located within the range of permissible decisions." *Sims*, 534 F.3d at 132 (internal quotations omitted).

Here, Judge Buchwald held that she was not bound by Judge Pauley's Class Order because, in her estimation, Judge Pauley found that both the "'All Natural' and 'non GMO' claims were subject to common proof: namely, if a challenged product contained a GMO, it would fail to be 'All Natural.'" SPA-46. Not so. She then reasoned that, since Plaintiffs subsequently abandoned their "non GMO" claims, this theory of common proof was eliminated. *Id.* However, the presence of GMOs in KIND's products is not the only (nor the primary) manner through which

33

Plaintiffs propose to prove those products were not "All Natural."[8] Judge Pauley recognized this in multiple decisions addressing the pleadings in this case.[9]

The core of Plaintiffs' "All Natural" labeling claims is completely divorced from any findings relating to the "Non GMO" claim, as Judge Pauley recognized when he held that, "if Plaintiffs identify one ingredient that a jury finds to be non-natural, they may be entitled to damages**.**" JA-1152. Judge Buchwald's justification for decertifying the classes ignored Judge Pauley's holding on class certification, as demonstrated by the following examples.

First, within the language Judge Buchwald cited from Judge Pauley's Class Order, Judge Pauley held that whether the "All Natural" and "non GMO" claims are deceptive are separate inquiries addressed by referring to the "labels" of "'All Natural' *and* 'non-GMO,'" through use of the conjunction "and" as well as the use of the plural "labels." JA-1146 (emphasis added).

One of several definitions for the word "and" is that it is "used to connect alternatives."[10] As the Supreme Court has explained, use of the conjunction "and"

---

[8] Even KIND has acknowledged as much. From the beginning of the case, KIND described the manner in which the "non-GMO" claim related to the "All Natural" claim as "a sub-theory to their 'natural' claims." JA-2747.

[9] JA-56 (initially dismissing the "non-GMO" claim without prejudice as not pleaded sufficiently separate from the "All Natural" claim); JA-142-49 (addressing motion to dismiss "non-GMO" claim as a separate claim distinct from the "All Natural" claim).

[10] Dictionary.com, *Meanings and Definitions of Words at Dictionary.com*, https://www.dictionary.com/browse/and (last accessed Jan. 17, 2023)

reflects the "linking [of] independent ideas." *Cf. Brueswitz v. Wyeth, LLC*, 562 U.S. 223, 236 (2011); *N.Y. Legal Assistance Grp. v. Bd. of Immigration Appeals*, 987 F.3d 207, 216 (2d Cir. 2021) ("a coordinating junction like 'and'" is typically used for "linking independent ideas.") (quoting *Brueswitz*, *supra*); *Ybarra v. Illinois*, 444 U.S. 85, 100, 100 S. Ct. 338, 347 (1979) ("independent clauses [are] joined by the conjunction 'and.'"). This reading is further confirmed by Judge Pauley's use of the plural form of "labels" to distinguish the two statements.

Indeed, Judge Pauley held that common issues predominate with regard to the "All Natural" claim in a section that makes no reference to GMOs—an omission which would make no sense if, as Judge Buchwald incorrectly held, the "non GMO" claims were necessary to the "All Natural" claims. Judge Pauley held:

> KIND also argues that Plaintiffs do not have a unified theory as to what "All Natural" means. As such, KIND avers that it is impossible for common questions to predominate when Plaintiffs cannot formulate a definition for the term "All Natural." … While these formulations of the definition "natural" differ, none excludes another.

JA-1150-51.[11]

Judge Buchwald based her decertification decision on the erroneous finding that "No Objective Definition of 'All Natural' Exists." SPA-31. This issue was

---

[11] Furthermore, the independence of the "All Natural" claim and the avenues of proof to succeed on that claim versus the separate and distinct "non-GMO" claim are demonstrably discussed in the decisions by Judge Pauley proceeding class certification. *E.g.*, JA-142-49 (addressing motion to dismiss "Non-GMO" claim as a separate claim distinct from the "All Natural" claim).

directly addressed and rejected by Judge Pauley.[12] And for the identical reasons that this erroneous conclusion did not support summary judgment, it similarly did not support decertification. Indeed, it directly conflicts with Judge Pauley's finding that multiple, non-contradictory definitions of "All Natural" are not an obstacle to establishing predominance. Judge Pauley explained that if a product contains GMOs then, by definition, such a product is not "All Natural," but he did not rule that this is the *only* avenue to demonstrate that KIND's Products are not "All Natural."

Nothing has changed from Judge Pauley's class certification determination that predominance for the "All Natural" claim is satisfied. Judge Buchwald's order decertifying the classes should be reversed.

### B. Judge Buchwald abused her discretion in departing from Judge Pauley's law of the case.

Under the law of the case doctrine, when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001). A court's decision on an issue should generally be adhered to by that court in subsequent stages in the same case. *See Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607, n.10 (2d Cir. 1999). The party

---

[12] Whether the "All Natural" claim is "accurate is a binary question: either it's true or it isn't." SPA-1146. Inexplicably, Judge Buchwald acknowledged this generally accepted articulation of the law, yet failed to properly apply it to the facts of this case.

seeking the benefit of this doctrine should not be prejudiced by a later-assigned judge's disregard of an earlier ruling. *Id.* at 607. In particular, prejudice results from "a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge that [the prior ruling] is not deemed controlling." *U.S. v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982).

While this doctrine is discretionary, and a court may depart from the law of the case for cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice, no such justifications exist here. *Johnson v. Holder*, 564 F.3d 95, 99100 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)); *see also Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 380 (S.D.N.Y. 2009) ("[T]his is not one of the cases in which a district judge has 'cogent' or 'compelling' reasons to overturn a prior district court holding that is law of the case."), *aff'd*, 374 F. App'x 71 (2d Cir. 2010).

The Supreme Court has cautioned that "courts should be loath to [revisit prior decisions in the case] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal quotation omitted). Specifically relevant here, "[u]nder the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,'

especially 'when one judge or court is asked to consider the ruling of a different judge or court.'" *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (cited with approval in *Waverly Props. LLC v. KMG Waverly*, No. 09-cv-3940 2011 WL 13322667, at *1 (S.D.N.Y. Dec. 19, 2011)).

"[U]pon reassignment, 'the new judge is well advised to pay particular heed to the doctrine of "law of the case," and not to attempt a de novo review of … decisions made over a lengthy period by diligent and experienced judicial officers who have handled the case previously.'" *Waverly Props.*, 2011 WL 13322667, at *1 (quoting *Peyser v. Searle Blatt & Co., Ltd.*, No. 99-cv-10785, 2004 WL 307300, at *1 (S.D.N.Y. Feb. 17, 2004)); *see also Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 842 (S.D.N.Y. 2018) (on summary judgment court held that previous ruling by different judge in the same case that was not "plainly erroneous" was law of the case); *Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) ("[C]ase reassignment does not put settled issues back into play. If it did, the result would be increased uncertainty and needless depletion of judicial resources.").

These principles were applied correctly by the Honorable Paul A. Engelmayer in a case procedurally similar to this one that he inherited after the untimely death of Judge Pauley. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, No. 17-cv-2614, 2022 WL 4621431 (S.D.N.Y. Sep. 30, 2022). Similar to this case, Judge Pauley

issued multiple decisions on motions to dismiss in that action, and discovery was conducted in accordance with those rulings prior to appearing before Judge Engelmayer on defendant's summary judgment motion. And just as KIND did here, the defendant raised "an argument Judge Pauley rejected at the motion to dismiss phase." *Id.* at *20. However, unlike Judge Buchwald here, Judge Engelmayer recognized that Judge Pauley already had decided the issue. *Id.* Judge Engelmayer noted that, "[a]fter a thoughtful review of the precedents, Judge Pauley" rendered his decision, even noting that "Judge Pauley recognized that New York courts might reach a different outcome here." *Id.* Judge Engelmayer rejected the defendant's assertion that a decisive change in controlling law had occurred and, without interjecting his own opinion on the issue, abided by Judge Pauley's "thoughtful review."[13]

Here, there was no reason to revisit Judge Pauley's carefully considered class certification decision. There is no change in the controlling Second Circuit law, and Plaintiffs' theory of the case upon which Judge Buchwald rested her opinion is similarly unchanged. All that changed was the judicial decisionmaker.

---

[13] *See also Donahue v. Pendleton Woolen Mills, Inc.*, No. 84-cv-7149, 1988 WL 36317, at *7-9 (S.D.N.Y. Apr. 13, 1988) (ruling on a motion to dismiss is the law of the case on a subsequent motion for summary judgment in the same case); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 398 n.54 (S.D.N.Y. 2015) (ruling on motion to dismiss was the law of the case on motion for class certification).

**III. In Order to Reach Her Dismissal Outcome, Judge Buchwald Abused Her Discretion in Excluding Plaintiffs' Expert Witnesses.**

    **A. This Court must reverse exclusion rulings based on errors of law or clearly erroneous factual findings, especially where the lower court assessed sufficiency rather than admissibility.**

"An abuse of discretion occurs when a district court: (i) bases a decision on an error of law or a clearly erroneous factual finding, or (ii) reaches a decision that is outside the range of permissible decisions." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (citation omitted). This Court also has held that an evidentiary ruling is "reversible if it also affects a party's substantial rights," as in this case when "a district court excludes a party's primary evidence in support of a material fact, and failure to prove that fact defeats the party's claim." *Boyce*, 464 F.3d at 385. "[E]ven in light of *Daubert* and its progeny, exclusion of expert testimony remains the exception rather than the rule," *Qube Films Ltd. v. Padell*, No. 13-cv-8405, 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016) (citations omitted).

> Even if movants are correct that there are flaws in [an expert's] factual premises, "unless the information or assumptions that the expert relied on were so unrealistic and contradictory as to suggest bad faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible. Less egregious suggestions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."

*In re M/V MSC Flaminia*, No. 12-cv-8892, 2017 WL 3208598, at *39 (S.D.N.Y. July 28, 2017) (citation omitted).

40

A district court "impermissibly crosses the line from assessing evidentiary reliability to usurping the role of the jury" when it evaluates the *sufficiency* of expert testimony rather than its *admissibility*. *In re Joint E. S. Dist. Asbestos Litig.*, 52 F.3d at 1131. When a district court reviews scientific evidence, "the question is not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence." *Id.* at 1133.

This Court has made clear that "the district court's *Daubert* gatekeeping role does not permit the district court, in ruling on evidentiary sufficiency, to reject admissible expert testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267-68 (2d Cir. 2002). Accordingly, this Court does not hesitate to reverse district courts that misapply *Daubert*. *See, e.g.*, *Sec. Litig. Teachers' Ret. Sys. of La. v. Pfizer, Inc.*, 819 F.3d 642, 665-7 (2d Cir. 2016) (reversing district court's exclusion of the entirety of an expert's opinion where only part of the testimony was deemed unreliable).

Federal Rule of Evidence 702 permits testimony from a qualified expert if: (1) the expert's knowledge will assist the trier of fact to understand the evidence or determine a fact in issue; (2) the expert bases the testimony on "sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the

case." In this regard, Rule 702 incorporates the principles the Supreme Court set out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 embodies a "liberal standard" of admissibility for expert testimony. *See, e.g.*, *Grand River Enters. Six Nations, Ltd. v. King*, 783 F. Supp. 2d 516, 526 (S.D.N.Y. 2011) (quoting *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005)). Regarding the "reliability" requirement, an expert must offer "some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008).

"[T]he rejection of expert testimony is the exception rather than the rule." *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 282 (S.D.N.Y. 2011) (quoting Federal Rule of Evidence 702 advisory committee's note); *Park West Radiology v. CareCore Nat'l LLC,* 675 F. Supp. 2d 314, 327 (S.D.N.Y. 2009) (same); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 749 (W.D.N.Y. 2020) (same).

### B. Just as numerous federal courts have previously found, Dr. Dennis's methodology is analytically sound, and Judge Buchwald's quibbles with his survey go to the weight of his testimony, not its admissibility.

Challenges to the design and implementation of consumer perception surveys go to the weight of the evidence and do not affect admissibility. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999); *Playtex Prod., Inc. v. Procter &*

*Gamble Co.*, No. 02-cv-8046-WHP, 2003 WL 21242769, at *2 (S.D.N.Y. May 28, 2003), *aff'd*, 126 F. App'x 32 (2d Cir. 2005) ("[T]he Second Circuit clarified in *Schering* that any methodological deficiencies in a survey properly relate to the weight afforded to the survey's conclusions rather than its admissibility."); *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457, 459 (S.D.N.Y. 2002); *see also, e.g.*, *Rise-N-Shine, LLC v. Duner-Fenter*, No. 14-cv-1305, 2015 WL 876470, at *3 (S.D.N.Y. Feb. 28, 2015) (finding arguments that universe of respondents was defined incorrectly in consumer survey "d[id] not rise to the level of destroying all relevance, and thus … any flaws bear exclusively on the weight of the results rather than their admissibility"); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 451–52 (S.D.N.Y. 2017) (failure to exclude "higher-end" consumers affected weight to be given survey results but did not "strip them of probative value").

As even Judge Buchwald acknowledged, Dr. Dennis is a highly experienced expert. SPA-25-26. Dr. Dennis' opinions here would assist the trier of fact in evaluating issues in this case; they are based on sufficient facts and data; and they are the product of reliable scientific principles and methods. *See* SPA-1504 ¶ 22. The "reliability" requirement under Federal Rule of Evidence 702 means that an expert must offer "some explanation as to how the expert came to his conclusion and

what methodologies or evidence substantiate that conclusion." *Riegel*, 451 F.3d at 127.

Dr. Dennis applied well-known and widely accepted reliable scientific principles and methods to the facts. The district court's criticisms, like KIND's, go to the weight of the evidence, not its admissibility and, as such, are a subject for cross-examination, not exclusion. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-cv-8317, 2017 WL 2664199, at *2 (S.D.N.Y. June 20, 2017)); *Daubert*, 509 U.S. at 594-95; *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-cv-5804, 2009 WL 959775, at *11 (S.D.N.Y. Apr. 8, 2009); *In re Scotts EZ Seed Litig.*, No. 12-cv-4727, 2017 WL 3396433, at *9-10 (S.D.N.Y. Aug. 8, 2017).

"Trial courts should not arrogate the jury's role in 'evaluating the evidence and the credibility of expert witnesses' by 'simply cho[o]s[ing] sides in [the] battle of the experts.'" *In re Joint S. & E. Dist. Asbestos Litig.*, 52 F.3d 1124,1135 (2d Cir. 1995) (quoting *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362, 366 (5th Cir. 1990)). KIND's arguments in support of its motion for summary judgment were based on its experts' counter arguments to Plaintiffs' experts.

This "battle of the experts" on disputed issues highlights the existence of disputed issues of fact for a jury.[14] In another "natural" food labeling case, the Ninth Circuit reversed the granting of defendant's summary judgment motion because the evidence in the record, which included conflicting testimony of expert witnesses, could allow a trier of fact to find that synthetic ingredients in the products made them unnatural and, thus, the trier of fact could conclude that the "All Natural" label was misleading. *Brazil*, 660 F. App'x at 533-34.

In *Joint Eastern & Southern District Asbestos Litigation*, the Second Circuit reversed a district court order granting a defendant's motion for judgment as a matter of law and setting aside the jury verdict. This Court held the district court improperly usurped the role of the jury by choosing one party's expert over the other and removing the case from the jury. 52 F.3d at 1137-38. Similarly, here KIND's expert's competing survey design choices do not render Dr. Dennis's survey inadmissible. This is a battle of experts regarding measuring consumer perception of the labels on KIND's products. Whether consumers were deceived, and the weight of the expert testimony both sides proffered, are issues for the jury. *See id.* at 1135.

---

[14] Advisory Committee Notes to the 2000 Amendments, Fed. R. Evid. 702 ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

Dr. Dennis has designed similar surveys in numerous other cases. *See* JA-2515 ¶ 41.[15] These surveys utilized the referendum question format—the same format used here—which is neither an experimental nor innovative survey technique. *Id.* ¶ 39. Judge Buchwald ignored applicable legal and scientific authority in her conclusion that Dr. Dennis' survey was biased and leading. SPA-29.

Specifically, Judge Buchwald criticized Dr. Dennis' survey design choice to present survey respondents with "one potential definition of 'All Natural'" rather than asking "open-ended questions to determine the consumer's understanding of the term." *Id.* at 30. The court ignored Dr. Dennis's explanation that the use of open-ended questions might have led to non-response bias, negativity bias, and significant issues in coding the text-based responses, which then would be vulnerable to criticism as a biased and subjective exercise. *See* JA-2512 ¶ 30 (citing Bradburn, N. M., Sudman, S., & Wansink, B. 2004. *Asking Questions: A Practical Guide to Questionnaire Design*, p. 167).

Additionally, Judge Buchwald rejected Dr. Dennis' testimony based on his decision to present only the "All Natural" claim on the survey label rather than as a

---

[15] *Ebin v. Kangadis Food Inc.*, No. 13-cv-2311 (S.D.N.Y.); *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (E.D.N.Y.); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-564 (N.D. Cal.); *Bowling v. Johnson & Johnson*, No. 17-cv-3982 (S.D.N.Y.); *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-1027 (N.D. Cal.); *Vizcarra v. Unilever United States, Inc.*, No. 20-cv-2777 (N.D. Cal.), *Benson v. Newell Brands, Inc.*, No. 19-cv-6836 (N.D. Ill.); *Maeda v. Kennedy Endeavors, Inc.*, No. 18-cv-459 (D. Haw.).

combined "All Natural / Non GMO" statement. SPA-32. Judge Buchwald's reasoning that this "undercuts the relevance of Dr. Dennis's results" ignored industry-standard practices in designing and administering materiality surveys. *See* JA-2507 ¶ 13, JA-2515 ¶ 39. In particular, Dr. Dennis' rationale for displaying "All Natural" in isolation from the "non GMO" claim was to control for consumers' preconceptions of KIND Products and avoid mirroring all attributes of the KIND Products in the fictitious survey labels. JA-1511 ¶ 41; JA-2512-13 ¶ 32.

In *Riegel*, a product defect case involving a balloon catheter, the Second Circuit affirmed a district court's order granting summary judgment and excluding a party's expert witness. 451 F.3d at 104, 127. The *Riegel* court found that the district court was within its discretion to exclude the expert's theories because the expert "provided *no explanation* as to how he had reached his conclusion that the rupture must have been caused by a manufacturing defect, and himself seems to have backed away from this conclusion in his deposition." *Id.* at 127 (emphasis added).

Not so here: Dr. Dennis not only provided scientific support for each of his design choices, but also explained the scientific backing for his survey design his in his deposition rather than backing away from such in his deposition like the expert in *Riegel*. For example, Dr. Dennis cited several authorities supporting his choice to use closed-ended survey questions versus open-ended questions. JA-2510 n.2 (citing Bradburn, N. M., Sudman, S., & Wansink, B. 2004. *Asking Questions: A Practical*

*Guide to Questionnaire Design*, at 167 (for quantitative surveys (not qualitative research), the use of closed-ended survey questions (not open-ended questions) is a more generally acceptable question format in the survey research industry)); *see also* 359. The Reference Guide on Survey Research, 2011 WL 7724258, at *22. Dr. Dennis further opined in his reports (*see* JA-2511-12 ¶¶ 27-30), and testified at deposition (*see* JA-1905-06), on the rationale for this design choice being that open-ended survey questions would lead to, among other things, non-response bias.

In excluding Dr. Dennis, Judge Buchwald relied on easily distinguishable and non-controlling trademark cases. SPA-29-30. In *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112 (2d Cir. 1984), the court held that a consumer confusion survey question that presented respondents with the "Donkey Kong-King Kong connection rather than permitted to make their own associations" was "an obvious leading question in that it suggested its own answer." *Id.* at 118 (citation omitted). The *Universal* court excluded a survey that utilized an improper universe and contained leading questions (*Id.*), in contrast to Dr. Dennis's closed-ended survey questions that incorporated a proper control response. Dr. Dennis's survey questions were not blatantly leading like those in *Universal*, and they were designed based on sound scientific principles. *See* JA-1504 ¶ 22.

Also distinguishable is *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017), where the court excluded a

consumer confusion survey on multiple grounds, including the fact that the survey fed the respondents a *false, suggestive premise* that the "VIVE" names were more similar than they actually were. *Id*. (emphasis added). The excluded expert in *Valador* did *not* use an accepted methodology, failed to use any controls, and was deemed unqualified because he lacked specific knowledge or specialty in trademark cases. *Id.* Here, there were no false or suggestive premises in Dr. Dennis's surveys.

The law of this Circuit dictates that the challenges to the design or methodology of a consumer survey, such as those asserted by KIND and accepted by the district court, go to the weight of the evidence, not its admissibility. *See Schering*, 189 F.3d at 228.[16] Therefore, the district court's exclusion of Dr. Dennis's opinions is a reversible abuse of discretion.

### C. Dr. Toutov's expert opinions are relevant and should be admissible for a jury's consideration.

District courts should not take on "the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul," because "[s]uch an inquiry would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury." *McCullock v. H.B. Fuller Co.*,

---

[16] Even if Judge Buchwald were right in finding some aspects of Dr. Dennis's survey to be unreliable (she is not), excluding the entirety of his opinions was an abuse of discretion by "throw[ing] the good out with the bad." *See, e.g.*, *Sec. Litig. Teachers' Ret. Sys. of La. v. Pfizer, Inc.*, 819 F.3d 642, 665-7 (2d Cir. 2016) (reversing district court's exclusion of the entirety of an expert's opinion where only part of the testimony was deemed unreliable).

61 F. 3d 1038, 1045 (2d Cir. 1995); *accord Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("contentions that assumptions are unfounded go to the weight, not the admissibility of the testimony"). "[G]aps or inconsistencies in the reasoning leading to the expert's opinion go to the weight of the evidence, not to its admissibility." *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017). "[T]he question is not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1133.

In undertaking this flexible inquiry, a district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions. *Amorgianos*, 303 F.3d at 266; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531-32 (6th Cir. 2008) ("The question of whether [the expert's] opinion is accurate in light of his use of [certain] data goes to the weight of the evidence, not to its admissibility, and the district court appropriately passed the torch to the jury to make this determination."). Judge Buchwald did the opposite. She instead "render[ed] independent assessments of the … evidence far beyond the role authorized by *Daubert*…," generally encroaching upon the factfinding role of the jury. *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1137, 1139 ("[T]he district

court impermissibly made a number of independent scientific conclusions—without granting plaintiff the requisite favorable inferences—in a manner not authorized by *Daubert*.").

Plaintiffs designated Dr. Anton Toutov as an expert chemist for the purpose of determining the *veracity* of KIND's "All Natural" labeling statements, an inquiry meaningful and relevant to a reasonable consumer's understanding of those statements. Importantly, while Dr. Toutov's expertise and qualifications are rooted in organic chemistry, his opinions on determining whether food ingredients are natural are not just based on pure chemistry expertise; his expert report explicitly lays out numerous "standards of naturalness" to form his analysis. *See* SA-280-91 ¶¶ 14-35. These standards include those used by various governments, including the U.S. Food and Drug Administration, scientific and dictionary definitions, consumer perceptions of the term, and KIND's own internal standards.

Dr. Toutov's consideration of KIND's own standards for naturalness reveal adverse admissions, which include ███████████████████████████████████ ████████████████████████ discussed by Dr. Toutov for ingredients in the 39 products at issue in this MDL, including ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

51

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ SA-289 ¶ 30; *see also supra* Section I.E.

### 1. Dr. Toutov's opinions are consistent with and relevant to prevailing consumer perceptions of "natural" food labeling.

Despite holding that Dr. Toutov was qualified as an expert in organic chemistry, Judge Buchwald summarily concluded that Dr. Toutov's opinions "bear no relationship to a reasonable consumer's definition of 'All Natural'" based on a misinterpretation of a single line of his deposition. SPA-41-42.[17] The court's conclusion that Dr. Toutov "did not consider a reasonable consumer's understanding of 'All Natural' in writing his report" (SPA-42) is wrong.

Dr. Toutov stated that consumer understanding of "natural" claims did not play a role when he was "distilling all of this information into [the] framework presented in his report—a framework that can be used by companies or consumers to assess the "naturalness" of a product. JA-1937 at 55:15–56:24. He did not testify that he did not consider consumer understanding in the remainder of his report. In fact, the sections of the Toutov report analyzing and applying his framework

---

[17] Similarly, KIND's "regulatory" expert's criticisms of Dr. Toutov go to the weight of the evidence, not its admissibility: Dr. Hutt testified in her deposition that she was a ███████████████ and that ████████████████████████████████████ ████████████████████████████████████████████████ SA-575 at 204:10-204:22.

indisputably *includes* what he found to be prevailing consumer perception of naturalness, *and his opinions are not inconsistent with those findings*. Indeed, one of the three elements of his analysis is devoted to that prevailing consumer perception: natural foods should be minimally processed. *See* SA-288 ¶ 29, SA-290-91 ¶¶31-35.

Judge Buchwald ignored 12 foundational pages of Dr. Toutov's expert report, while similarly disregarding his testimony that he reviewed an "entire field of study actually related to consumer perceptions" relating to "desirability criteria" for consumers purchasing "natural" or "all natural" foods. JA-1937 at 55:23-56:1. Thus, whether or not Dr. Toutov considered consumer perception in "distilling" the naturalness framework, he evaluated consumer perception studies that are consistent with his second element of naturalness, and he testified that consumers could utilize his framework to determine whether a food product they buy is natural or not. Judge Buchwald's decision to dismiss the entirety of his opinions on relevance grounds based on a single line of deposition testimony was an abuse of discretion.

### 2. Judge Buchwald reached erroneous conclusions regarding consumer perceptions of vitamin labeling statements to avoid Dr. Toutov's undisputed finding of synthetic ingredients in certain KIND products.

Perhaps the most startling aspect of Judge Buchwald's exclusion of Dr. Toutov was her concession, followed by her immediate rejection, of the fact that he actually did identify three unequivocally "artificial" or "synthetic" ingredients in KIND products. SPA-43 n.27. The court decided, as a matter of law, that "[n]o

reasonable consumer could believe that they would receive 50% of their daily value of vitamins from a single bar without an artificial or synthetic vitamin being added to the product." *Id.* This holding assumed a sophisticated level of consumer understanding of the chemical and biological issues underlying such a statement that is unsupported by any evidence in the record, is contradicted by Plaintiffs' own testimony,[18] and which relied entirely on a distinguishable, unpublished California district court decision, *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012).

In *Hairston*, the label statement in question was "all natural with vitamins." *Hairston*, 2012 WL 1893818, at *5. Here, the "All Natural" claim appeared below and separate from the claim that the bar had "50% DV ANTIOXIDANTS VITAMINS A, C AND E":

---

[18] Plaintiff Livingston's deposition testimony, indicating she did not know the difference between a naturally occurring vitamin and a synthetic vitamin, undermines Judge Buchwald's reasoning here. JA-1251 at 160:4-10. Plaintiff Thomas similarly lacked the understanding Judge Buchwald seemed to think would be inherent to a reasonable consumer. JA-1316 at 166:5-167:7 ("I know that vegetables – some vegetables naturally have vitamins in them, but if you're referring to kind of more produced foods, I – I don't know the answer.").



By ignoring Plaintiffs' testimony (*supra* note 18) while highlighting other testimony better fitting the court's narrative, in a manner persistently unfavorable to Plaintiffs, Judge Buchwald again engaged in the improper weighing of evidence to reach a defective conclusion of law, all under the cloak of a *Daubert* inquiry.

>    **3. Dr. Toutov's conclusions that all 39 of the challenged KIND products contain unnatural ingredients are based on evidence from KIND regarding the actual ingredients used in those products.**

Judge Buchwald also summarily concluded that the entirety of Dr. Toutov's opinions are based on analysis of "irrelevant ingredients." SPA-10. The district court reached this sweeping characterization because, it claimed, Dr. Toutov did not test KIND's ingredients himself and only considered typical production of the ingredients listed on KIND's products, rather than the actual production utilized by KIND's vendors. *Id.* First, the district court provides no basis that, to be reliable, Dr. Toutov must have personally analyzed KIND's offensive ingredients under a microscope. Second, while Dr. Toutov opined on typical industry practices for

production of certain ingredients—often in his "Background" explanation of each ingredient—the district court ignored Dr. Toutov's subsequent "Naturalness Conclusion" for each ingredient, where he *did* provide direct evidence—in the form of KIND's internal communications and communications with ingredient vendors— of "the source actually used in KIND products." SPA-44.

In discussing soy lecithin, Dr. Toutov points to ████████████ ████████████████████████████████████████ ██████████████████████████████ SA-294-96 ¶¶ 43-44. His report also points to ███████████████████████ ████████████████████████████████████████ ██████████████ that its soy lecithin ingredient was not natural despite being labeled as such. SA-294-95 ¶ 43.

Dr. Toutov offered the same evidence of ███████████ for the actual soy protein isolate ingredient used in KIND's products. SA-298-99 ¶ 50. Judge Buchwald completely ignored this relevant evidence of KIND's use of unnatural processes to create two of its key ingredients at issue in this litigation (covering 29 of the 39 challenged products), as well as ████████████████ ████████████████████████████████████████ ██████ *Id.*, SA-294-95 ¶ 43; *see also* JA-1812-13.

Judge Buchwald's evaluation of Dr. Toutov's opinions on KIND's canola oil and glucose syrup suffers from the same omission. In fact, the *very next sentence* of Dr. Toutov's report, after the one quoted by Judge Buchwald, states: ███████ ███████████████████████████████████████████████████████████████ ████████████████████████████ SA-303 ¶ 55. Dr. Toutov went on to explain that the reason KIND's canola oil should not be in a food labeled "all natural" is because of the *process* by which it is made—which, notably, also includes ███████ ████████—not whether or not it is *sourced* from GMO crops. *Id.* The same mischaracterization follows for KIND's glucose syrup. SA-324-25 ¶ 90. Judge Buchwald followed the same course in critiquing Dr. Toutov's analysis of KIND's palm oil, only quoting a statement in his background paragraph on the ingredient (SA-304-05 ¶ 57) while ignoring his finding, based on KIND's own documents, that ███████████████████████████████████████████████████████████████████████ ████████████████ SA-306-07 ¶ 61. Dr. Toutov similarly concluded the remaining ingredients in his report were *unnatural* based on direct evidence from KIND that the actual ingredients it sourced were unnatural for a variety of reasons, most often

through internal documentation demonstrating they were heavily processed,[19] *not* that they were sourced from GMO crops.[20]

Even if some of the background descriptions of the challenged ingredients in Dr. Toutov's report indicated prevalent industry sourcing or processing methods that are not specifically tied to a KIND ingredient, his ultimate analyses were backed by documentation from KIND regarding the actual ingredients it sourced. Judge Buchwald chose to ignore those aspects of Dr. Toutov's report and instead quoted him out of context to mischaracterize his entire report as speculative and irrelevant.[21]

The district court's only explicit attack on Dr. Toutov's reliability is to accuse him of "sensationalizing" KIND's use of certain chemicals in the processing of its ingredients. SPA-44 n.28. This footnote contains no citation or specific names of

---

[19] *See* SA-309-10 ¶ 66 ███████████████████ SA-312 ¶ 71 ████████████████████ SA-316-17 ¶ 77 (natural flavors contain ████████████████████ SA-321 ¶ 84 ████████ chemically distinct from naturally occurring pectin), SA-328-29 ¶¶ 97-99 (brown rice syrup produced with ████████████ SA-332 ¶ 104 (tapioca syrup ████████████████████████████████████ SA-334-35 ¶ 109 (vegetable glycerin produced via █████████ ████████ SA-337-38 ¶ 115 (ascorbic acid ███████████ SA-340-41 ¶ 121 (same re vitamin A acetate), SA-343 ¶ 126 (same re vitamin E acetate).

[20] Dr. Toutov provided evidence that KIND's canola oil actually █████████ making the "All Natural" labeling false and misleading independent of the oil also being highly processed, and independent of KIND's ████████████ that it also offends. SA-302-03 ¶ 55 (internal emails indicating KIND believed █████

[21] Excluding Dr. Toutov's opinions in their entirety is an abuse of discretion if any portion of his expert report or testimony is admissible. *See supra* note 16.

chemicals, but Dr. Toutov explains throughout his report that the use of solvents and other chemicals in the processing of ingredients is an important factor that both scientists *and consumers* consider when determining whether foods are natural. *See generally* SA-280-91 ¶¶ 14-35. This is especially important where Dr. Toutov presented evidence that certain chemicals, like ███████████████ in the final KIND products containing soy lecithin, soy protein isolate, or canola oil because

███████████████████████████████████████████

*See* SA-292–SA-303 ¶¶ 40-55. These three ingredients, alone, cover all 39 products that Plaintiffs challenge. *See* JA-1812-13.

Further, Judge Buchwald's footnote impermissibly infers that the *presence and/or concentration* of these harmful chemicals in the final product is the sole concern of the consumer. SPA-44 n.28. Dr. Toutov's report indicated that consumer perception regarding heavy processing stems not just from dietary health concerns, but also concerns negatively impacts on the environment. SA-288-89 ¶ 29, SA-292-93 ¶ 40 (re█████

Judge Buchwald reached her conclusion to exclude Dr. Toutov by assuming the scientific veracity of KIND's "All Natural" labeling is somehow in a different universe from, and irrelevant to, consumer perception. Whether or not KIND's labels were false is a genuine issue of material fact in this case, and a jury should be permitted to consider Dr. Toutov's opinions in determining whether consumers were

deceived by KIND. Ultimately, this inquiry goes to the weight of Dr. Toutov's opinions, not their admissibility. *McCullock*, 61 F.3d at 1044; *Restivo*, 846 F.3d at 577.

## <u>CONCLUSION</u>

Plaintiffs-Appellants respectfully ask that the Court reverse the district court's summary judgment ruling, reverse its order striking the expert opinions of Dr. Dennis and Dr. Toutov, reverse its order decertifying the classes, and remand the case with instructions for a jury trial on liability and damages.

Respectfully submitted,

Dated:  January 20, 2023       By:    */s/ Todd S. Garber*
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3283
Fax: (914) 824-1561
*tgarber@fbfglaw.com*

Bradley K. King
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*bking@ahdootwolfson.com*

Daniel L. Warshaw
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Tel: (818) 788-8300
Fax: (818) 788-8104
*dwarshaw@pwfirm.com*

*Co-Lead Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 21(d)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. R. App. P.21(d), this document contains 13,795 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Respectfully submitted,

Dated:  January 20, 2023        By:    */s/ Todd S. Garber*
                                        Todd S. Garber
                                        **FINKELSTEIN, BLANKINSHIP,**
                                        **FREI-PEARSON & GARBER, LLP**
                                        One North Broadway, Suite 900
                                        White Plains, New York 10601
                                        Tel: (914) 298-3283
                                        Fax: (914) 824-1561
                                        *tgarber@fbfglaw.com*