# No. 22-2684

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHARITY BUSTAMANTE, individually and on behalf of all others similarly situated, AMANDA SHORT, SARAH THOMAS, on behalf of themselves and all others similarly situated, ELIZABETH LIVINGSTON, *Plaintiffs-Appellants*,

AMY CAVANAGH, individually and on behalf of all others similarly situated, ROBERT O'BRIEN, individually, and on behalf of all others similarly situated, MAYRA GALVEZ, individually and on behalf of all others similarly situated, CHRIS C. GALVEZ, individually and on behalf of all others similarly situated, BRANDON KAUFER, DENA KARNEZIS, individually and on behalf of all others similarly situated, DANIELLE COOPER, individually and on behalf of all others similarly situated,

*[Caption continued on inside cover]*

On Appeal from the United States District Court for the Southern District of New York, No. 15-md-2645, Hon. Naomi Reice Buchwald, U.S. District Judge

## BRIEF FOR DEFENDANT-APPELLEE

Keri Borders
Dale Giali
Rebecca Johns
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
(213) 443-4355
kborders@kslaw.com

April 20, 2023                    *Counsel for Defendant-Appellee KIND LLC*

LEE JACKSON, individually and on behalf of all others similarly situated, CHARLIE MCDONALD, BENJAMIN KARTER, individually and on behalf of all others similarly situated and the general public, MELANIE HOUSE, individually and on behalf of all others similarly situated, ERICH ZANDER, BONNIE BURKETT, BARRY A. COHEN,

*Plaintiffs,*

v.

KIND, LLC, a New York limited liability company,

*Defendant-Appellee.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), KIND, Inc. is a direct parent of KIND LLC, Mars Wrigley Confectionary, US, LLC is the direct parent of KIND Inc., and Mars Inc. is the parent company of Mars Wrigley Confectionary, US, LLC. Mars, Inc. is a privately held corporation. No publicly held corporation currently owns 10% or more of the stock of Mars, Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.............................................i

TABLE OF AUTHORITIES.....................................................iv

INTRODUCTION ..............................................................1

STATEMENT OF ISSUES.......................................................3

STATEMENT OF THE CASE ....................................................4

    A.    KIND Products ......................................................4

    B.    Plaintiffs' Evolving Challenge To KIND's Labeling ...............5

    C.    The District Court Grants Class Certification ......................7

    D.    After Class Certification, Plaintiffs Abandon Their GMO Claims ...................................................................9

    E.    Plaintiffs' Evolving Challenge To KIND's "All Natural" Labeling .................................................................10

            1.    Plaintiffs Attempt To Demonstrate The Reasonable Consumer's Understanding Of "All Natural" With The Dennis Perception Survey ...........10

            2.    Plaintiffs Attempt To Establish The Falsity Of "All Natural" With Toutov's "Elements Of Naturalness" Framework ...........................13

    F.    The District Court Grants KIND's Motions For Summary Judgment And To Decertify The Classes, And Excludes The Opinions Of Dennis And Toutov ...........15

SUMMARY OF ARGUMENT ...................................................18

STANDARD OF REVIEW......................................................20

ARGUMENT .................................................................24

I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF KIND ........................... 24

    A.    The District Court Properly Applied The Reasonable Consumer Standard ................................................. 24

    B.    The District Court Correctly Ruled That Plaintiffs Did Not Establish What "All Natural" On KIND Labels Means To The Reasonable Consumer ....................... 28

        1.    The District Court Did Not Abuse Its Discretion In Excluding The Dennis Survey ................................ 29

        2.    Plaintiffs Were Required To Demonstrate The Reasonable Consumer's Interpretation Of The Term "All Natural" ........................................................ 37

    C.    The District Court Correctly Held That Plaintiffs Failed To Raise A Triable Issue Of Fact That The Natural Claim Deceived Reasonable Consumers ................. 41

        1.    The District Court Did Not Abuse Its Discretion In Excluding Toutov's Report ..................................... 42

        2.    Plaintiffs Failed To Demonstrate A Triable Issue Of Fact Regarding Whether Kind Plus Antioxidants Bars Deceived Reasonable Consumers ................................................................... 47

II.    THE DISTRICT COURT'S DECISION TO DECERTIFY THE CLASSES WAS NOT AN ABUSE OF DISCRETION .......... 49

CONCLUSION ........................................................................ 55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*A&E Adventures LLC v. Intercard, Inc.,*
    529 F. Supp. 3d 1333 (S.D. Fla. 2021)....................................41

*Ackerman v. Coca-Cola Co.,*
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) .......................38

*Amara v. CIGNA Corp.,*
    775 F.3d 510 (2d Cir. 2014) .................................................49

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
    303 F.3d 256 (2d Cir. 2002) ..............................23, 30, 32, 42

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..............................................................21

*Aramony v. United Way of Am.,*
    254 F.3d 403 (2d Cir. 2001) ...........................................51, 52

*Arizona v. California,*
    460 U.S. 605 (1983)..............................................................51

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013)...........................................27

*Boucher v. Syracuse Univ.,*
    164 F.3d 113 (2d Cir. 1999) .................................................49

*Bowe v. Pub. Storage,*
    2015 WL 10857339 (S.D. Fla. June 2, 2015) ......................43

*Boyce v. Soundview Technology Group, Inc.,*
    464 F.3d 376 (2d Cir. 2006) .................................................29

*Burke v. Gen. Motors Corp.,*
    218 F. App'x 951 (11th Cir. 2007) .......................................31

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.,*
    239 F.3d 179 (2d Cir. 2001) .................................................42

iv

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ............................................................... 22

*Chufen Chen v. Dunkin' Brands, Inc.,*
 954 F.3d 492 (2d Cir. 2020) ................................................. 26

*Cohen v. JP Morgan Chase & Co.,*
 498 F.3d 111 (2d Cir. 2007) ................................................. 25

*Colpitts v. Blue Diamond Growers,*
 527 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................... 38

*Crawford v. Franklin Credit Mgmt. Corp.,*
 758 F.3d 473 (2d Cir. 2014) ................................................. 22

*Daubert v. Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993) ....................................................... 24, 45

*Davis v. New York,*
 316 F.3d 93 (2d Cir. 2002) ................................................... 21

*Duran v. Henkel of Am., Inc.,*
 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................... 25

*Ebner v. Fresh, Inc.,*
 838 F.3d 958 (9th Cir. 2016) ............................................... 26

*Electra v. 59 Murray Enters., Inc.,*
 987 F.3d 233 (2d Cir.),
 *cert. denied*, 142 S. Ct. 563 (2021) ...................................... 23

*Fink v. Time Warner Cable,*
 714 F.3d 739 (2d Cir. 2013) ................................................. 26

*First Nat'l Bank of Hollywood v. Am. Foam Rubber Corp.,*
 530 F.2d 450 (2d Cir. 1976) ................................................. 52

*Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.,*
 221 F. Supp. 2d 457 (S.D.N.Y. 2002) ................................... 32

*Gen. Tel. Co. of Sw. v. Falcon,*
 457 U.S. 147 (1982) ............................................................... 50

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987) ............................................. 50

*Glob. Network Commc'ns, Inc. v. City of New York*,
    562 F.3d 145 (2d Cir. 2009) ................................................ 20

*Hughes v. Ester C Co.*,
    330 F. Supp. 3d 862 (E.D.N.Y. 2018) ................................. 27

*In re Crysen/Montenay Energy Co.*,
    226 F.3d 160 (2d Cir. 2000) ................................................ 51

*In re Joint E. & S. Dist. Asbestos Litig.*,
    52 F.3d 1124 (2d Cir. 1995) ........................................ 21, 22

*In re Mirena IUS Levonorgestrel-*
*Related Prods. Liab. Litig. (No. II)*,
    982 F.3d 113 (2d Cir. 2020) ................................................ 23

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ......................................... 32

*In re Williams-Sonoma Song-Beverly Act Cases*,
    No. JCCP-4611 (Cal. Super. Ct. S.F. Cnty. Mar. 16, 2018) .............. 33

*Jennings v. Yurkiw*,
    18 F.4th 383 (2d Cir. 2021) ................................................ 52

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ........................................... 26

*Johnson v. Holder*,
    564 F.3d 95 (2d Cir. 2009) ................................................ 52

*Jones v. ConAgra Foods, Inc.*,
    2014 WL 2702726 (N.D. Cal. June 13, 2014) ..................... 27

*Kilpatrick v. Breg, Inc.*,
    613 F.3d 1329 (11th Cir. 2010) .......................................... 31

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................... 24

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ............................................. 26

*Lewis v. Whelan*,
    99 F.3d 542 (2d Cir. 1996) ............................................. 51

*Major v. Ocean Spray Cranberries, Inc.*,
    2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ......................................... 41

*Malletier v. Donney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) .................................... 31

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ........................................ 37, 38

*Maraschiello v. City of Buffalo Police Dep't*,
    709 F.3d 87 (2d Cir. 2013) ............................................. 51

*Marrache v. Bacardi U.S.A., Inc.*,
    17 F.4th 1084 (11th Cir. 2021) ......................................... 25

*Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*,
    2004 WL 326708 (S.D.N.Y. Feb. 23, 2004) ......................................... 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................ 21

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016) ............................................. 50

*McCullock v. H.B. Fuller Co.*,
    61 F.3d 1038 (2d Cir. 1995) ............................................. 23

*Meterlogic, Inc. v. KLT, Inc.*,
    368 F.3d 1017 (8th Cir. 2004) ........................................... 31

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................. 23

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) ..................................... 33

*Olin Corp. v. Lamorak Ins. Co.*,
    332 F. Supp. 3d 818 (S.D.N.Y. 2018)..................................................52

*Opto Generic Devices, Inc. v. Air Prods. & Chems., Inc.*,
    2010 WL 982410 (N.D.N.Y. Mar. 15, 2010) .......................................43

*Pardini v. Unilever U.S., Inc.*,
    2020 WL 6821071 (N.D. Cal. July 10, 2020)......................................33

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
    2003 WL 21242769 (S.D.N.Y. May 28, 2003) ....................................32

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014)........................................................27

*Randolph v. Mondelez Glob. LLC*,
    2022 WL 953301 (S.D.N.Y. Mar. 30, 2022)........................................25

*Ries v. Ariz. Beverages USA LLC*,
    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)....................................27

*Sagendorf-Teal v. County of Rensselaer*,
    100 F.3d 270 (2d Cir. 1996) .............................................................51

*Saxon Glass Techs., Inc. v. Apple Inc.*,
    393 F. Supp. 3d 270 (W.D.N.Y. 2019) ..............................................31

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999) .............................................................30

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) .............................................................22

*Shannon v. N.Y.C. Transit Auth.*,
    332 F.3d 95 (2d Cir. 2003) ...............................................................21

*Singleton v. Fifth Generation, Inc.*,
    2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017).....................................25

*Spak v. Phillips*,
    857 F.3d 458 (2d Cir. 2017) .............................................................20

*Sperling v. Stein Mart, Inc.*,
    291 F. Supp. 3d 1076 (C.D. Cal. 2018) .................................. 41

*Starter Corp. v. Converse, Inc.*,
    170 F.3d 286 (2d Cir. 1999) ................................................ 30

*Stuto v. Herman*,
    181 F.3d 83, 1999 WL 335369 (2d Cir. 1999) ..................... 51

*United States v. Birney*,
    686 F.2d 102 (2d Cir. 1982) ............................................... 52

*United States v. Wasylyshyn*,
    979 F.3d 165 (2d Cir. 2020) ............................................... 40

*Washburn v. Merck & Co.*,
    213 F.3d 627, 2000 WL 528649 (2d Cir. 2000) ................... 24

*Wu v. Pearson Educ. Inc.*,
    2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012).......................50

*Zellers v. NexTech Ne., LLC*,
    533 F. App'x 192 (4th Cir. 2013) ........................................ 31

*Zervos v. Verizon N.Y., Inc.*,
    252 F.3d 163 (2d Cir. 2001) ............................................... 23

## Rules

Fed. R. Civ. P. 23 ............................................................ *passim*

Fed. R. Evid. 403........................................................ 30, 31, 32

Fed. R. Evid. 702....................................................23, 30, 31, 35

**Other Authorities**

Diamond, Sahri Seidman
    Reference Guide on Survey Research,
    *in* Reference Manual on Scientific Evidence (3d ed. 2011) ................ 34

1 McLaughlin, Joseph M.
    McLaughlin on Class Actions (19th ed.) ........................................... 50

## INTRODUCTION

This appeal presents the straight-forward issue of whether the District Court erred in finding that Plaintiffs failed to demonstrate the existence of a triable issue of fact that the "All Natural" portion of the "All Natural/NON GMO" label statement on 39 different KIND products deceived reasonable consumers (the "Natural Claim"). It did not.

Plaintiffs originally coupled the Natural Claim with a challenge to the "NON GMO" and "No Genetically Engineered Ingredients" label statements (the "GMO Claims"). At class certification, Plaintiffs relied heavily on the argument that common issues of fact and law predominated because both label statements were false for the same reason: the alleged presence of genetically modified ingredients in KIND's products. After class certification, Plaintiffs' inability to garner any evidence whatsoever to support that assertion led them to abandon their GMO Claims. Without the GMO Claims, Plaintiffs were left without a unified theory as to why the Natural Claim was deceptive on all 39 KIND products. To remedy that problem, Plaintiffs turned to two experts, but neither of them could provide admissible evidence of what they needed to prove in this case: a reasonable consumer's understanding of

"All Natural," and whether KIND's use of "All Natural" on all 39 KIND products was deceptive. Accordingly, the District Court properly granted summary judgment and decertified the classes.

Plaintiffs fail to demonstrate that the District Court's decision to grant summary judgment was in error or that it abused its discretion in excluding Plaintiffs' expert reports. Plaintiffs contend that they should be exempt from demonstrating a reasonable consumer's expectation of a product labeled "All Natural," and insist that it is "good enough" that one of their experts opined that the challenged KIND products are not "natural." But Plaintiffs may not ignore the reasonable consumer standard. Plaintiffs' failure to proffer any admissible evidence that demonstrated that the "All Natural" statement deceived reasonable consumers is dispositive.

Despite the change in litigative posture, Plaintiffs contend the District Court lacked the power to reconsider the initial grant of class certification under the law of the case doctrine. But under this Court's precedent, class certification is not a one-and-done analysis. To the contrary, as this Court has made clear, district courts are under an affirmative duty to monitor their class certification decisions and

reassess them as cases develop in order to ensure continued compliance with the requirements of Federal Rule of Civil Procedure 23. That is exactly what happened—and should have happened—here.

This Court should decline Plaintiffs' invitation to rewrite its own well-settled law and affirm the District Court's Order.

## STATEMENT OF ISSUES

1.    Whether the District Court properly granted summary judgment in favor of KIND where Plaintiffs failed to raise a triable issue of fact that KIND's product labels were deceptive to the reasonable consumer.

2.    Whether the District Court abused its discretion when it excluded the testimony and opinions of Plaintiffs' expert witness, Dr. J. Michael Dennis, because his survey was unreliable and irrelevant.

3.    Whether the District Court abused its discretion when it excluded the testimony and opinions of Plaintiffs' expert witness, Dr. Anton Toutov, because it could not assist the trier of fact in assessing whether a reasonable consumer was deceived by the "All Natural" label statement and was, therefore, irrelevant.

4. Whether the District Court abused its discretion by decertifying the classes where Plaintiffs abandoned the central premise of the theory of deception on which class certification was granted and could not demonstrate common evidence of consumer deception.

## STATEMENT OF THE CASE

### A. KIND Products

KIND makes wholesome and delicious snacks with ingredients consumers recognize like nuts, whole grains, and a variety of fruits and spices. This case involves a challenge to the "All Natural" labeling on thirty-nine (39) products from three distinct KIND product lines: KIND Core Bars (nut-based snack bars); KIND Healthy Grains Bars (grain-based snack bars); and KIND Healthy Grains Clusters (non-bar bags of bite-sized granola). JA-71 ¶ 1.

The "All Natural" statement never appeared on KIND labels standing alone; it appeared only as part of the "All Natural/NON GMO" label statement. JA-2192 ¶ 15. Beginning in 2014, before the first of the underlying lawsuits was filed, KIND began removing the "All Natural/NON GMO" label statement and replacing it with "NON GMO" on a rolling, product-by-product basis. JA-2191 ¶¶ 9-12; JA-2196-2198. By the end of 2015, the overwhelming majority of the challenged KIND

products were no longer labeled "All Natural." JA-2196-2198; JA-1130.

## B. Plaintiffs' Evolving Challenge To KIND's Labeling

This Multi District Litigation has changed dramatically since its inception. The initial impetus for the consolidated lawsuits was the March 2015 public announcement that the Food & Drug Administration ("FDA") had issued a warning letter to KIND regarding its use of the phrase "healthy and tasty" in copy on the back of its iconic KIND bar packaging. SPA-3-4. In the thirteen lawsuits that followed issuance of the warning letter, Plaintiffs not only challenged KIND's "healthy" label statement as deceptive—because the product allegedly did not comply with FDA's healthy regulations—but many of the complaints also included claims that 39 different KIND products were falsely labeled as "All Natural" and "NON GMO."

Plaintiffs voluntarily dismissed their "healthy" claims after the FDA withdrew its challenge to the "healthy" label statement in 2016. In the Amended Consolidated Complaint ("ACC"), and at class certification, Plaintiffs challenged three different iterations of KIND's labels on 39 individual products: (i) "All Natural/NON GMO" shown below left; (ii) "NON GMO" shown below middle; and (iii) "No Genetically

Engineered Ingredients" shown below right. JA-71-72, 74-75; JA-1126-JA-1130.

  

The ACC, however, did not express a unified or coherent theory of deception. Regarding "All Natural," Plaintiffs presented five potential definitions under which they asserted KIND products could be considered "deceptively" labeled:

(1)    "All Natural" means that the food complies with the dictionary definition of "natural," meaning that it is a "represent[ation] that 'the whole quality [and] extent' of the ingredients . . . '[exist] in or [are] caused by nature; not made or caused by humankind'"; or

(2)    "All Natural" means that the food complies with FDA's 1993 Policy Statement that FDA would take no enforcement action with respect to the term "natural" on food labels if "'nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food.'" 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); or

(3)    "All Natural" means the food meets USDA's Standard For Natural Labeling For Meat And Poultry; or

(4) "All Natural" means the food meets USDA's Requirements for Certified Organic Foods; or

(5) "All Natural" means that the food does not contain genetically modified ingredients.

JA-83-87 ¶¶ 39-49.

The ACC identified 11 different ingredients in one or more of the 39 challenged KIND products that were allegedly not "natural" under at least one of these five potential definitions. JA-87 ¶ 49.

With respect to their GMO Claims, Plaintiffs did not specifically identify *any* ingredient in the challenged KIND products that was genetically engineered. Instead, Plaintiffs alleged that most corn and soy crops grown in the United States are genetically engineered and, therefore, any product containing a corn or soy-based ingredient *potentially* contained a GMO ingredient. JA-81-83 ¶¶ 34-35. The ACC identified five ingredients that *could* be derived from GMO crops and asserted that a single test of a single KIND product revealed a "positive" result for GMO soy DNA. JA-81 ¶¶ 33, 35.

## C. The District Court Grants Class Certification

Plaintiffs sought to certify three separate state classes based on both the Natural Claim and the GMO Claims for the states of California, New York, and Florida. Dkt. 177-1 at 11-12. KIND opposed class

certification and argued that, among other things, common issues of law and fact did not predominate under Federal Rule of Civil Procedure 23 because Plaintiffs asserted multiple theories of deception (*i.e.*, the Natural Claim and the GMO Claims) and the KIND product label substantively changed during the class period (*i.e.*, "All Natural" was removed). *See generally* Dkt. 181.

The District Court disagreed with KIND and found that those issues did not preclude class certification. JA-1125-1169. Fundamental to this decision was the District Court's conclusion that "All Natural" and "Non GMO" / "No Genetically Engineered Ingredients" were functionally the same. JA-1146 ("the differences between 'Non-GMO' and 'No Genetically Engineered Ingredients' on one hand, and 'All Natural' on the other, are minute."). Accordingly, the District Court reasoned that because a variant of the GMO statement remained on the labels throughout the class period, Plaintiffs had challenged a common label statement and "[a]ll potential members in Plaintiffs' proposed classes would have seen at least one variation of the allegedly deceptive

advertising." JA-1140-1141.[1] In addition, even though Plaintiffs alleged five different definitions of "natural," the District Court found that "none of these definitions contradict[ed] the others" and, therefore, common questions of fact predominated on that issue. JA-1147, 1150-1151.

## D. After Class Certification, Plaintiffs Abandon Their GMO Claims

Once Plaintiffs made it over the hurdle of class certification, they abandoned the GMO Claims on which they and the District Court had relied in certifying the classes. Dkt. 249 at 3; SPA-21. Plaintiffs were forced to do so because they had no evidence that the 39 challenged KIND products contained any genetically engineered ingredients. JA-2717-2750; Dkts. 100, 101; Dkt. 249 at 3. Although they had voluntarily

---

[1] Plaintiffs argue that the District Court had "important policy considerations" for finding predominance because otherwise companies could—ostensibly—avoid liability for false advertising by strategically making changes to their labeling during the class period. *See* Opening Br. 9 (quoting JA-1151). Setting aside the implausibility of a company attempting such a scheme, KIND never objected to certification based on the distinction between "NON GMO" and "No Genetically Engineered Ingredients." Instead, KIND argued that "All Natural" and "NON GMO" were not equivalent and that classes should not be certified for the *Natural Claim* for periods after "All Natural" was removed from the label. Certifying the classes to account for the statements that appeared on the label is not a scheme to avoid "potential liability," but rather ensures that only class members who had potentially been exposed to the allegedly deceptive advertising were included in the class.

dismissed claims as to three-fourths of the label statements they originally challenged ("healthy;" "NON GMO;" and "No Genetically Engineered Ingredients"), Plaintiffs were undeterred and continued to pursue the Natural Claim even though the "All Natural" label statement had long since been removed from KIND product labels.

### E. Plaintiffs' Evolving Challenge To KIND's "All Natural" Labeling

Plaintiffs' decision to abandon their GMO Claims impacted the Natural Claim because their preferred definition of "All Natural" was that the product did not contain genetically modified ingredients. *See* JA-86-87 ¶¶ 48-49; JA-1146-1147; SPA-21. Without the crutch of their GMO Claims, Plaintiffs had no class-wide theory, let alone evidence, that the "All Natural" statement was deceptive on all 39 KIND products. At the close of discovery, Plaintiffs attempted to remedy this dispositive shortcoming through the designation of two expert witnesses: Dr. J. Michael Dennis ("Dennis") and Dr. Anton Toutov ("Toutov").

#### 1. Plaintiffs Attempt To Demonstrate The Reasonable Consumer's Understanding Of "All Natural" With The Dennis Perception Survey

Dennis proffered a consumer perception survey, which he testified was designed to demonstrate how reasonable consumers interpreted "All

Natural."[2] JA-1499-1537; *see also* JA-1906 (Tr. 81:2-5). Dennis, however, admitted that all his survey did—indeed, all it was designed to do—was *confirm* his interpretation of Plaintiffs' theory of liability. JA-1905 (Tr. 80:7-81:12), JA-1907 (Tr. 87:19-88:25).

Dennis' survey was conducted in a "referendum" style in which he separately presented two definitions of "natural" to respondents and asked them to agree or disagree if they would expect a food product labeled "natural" to have those features. JA-1510-1516. The definitions crafted by Dennis, with the assistance of Plaintiffs' counsel, were:

- Definition One: The product will not contain artificial and synthetic ingredients.

- Definition Two: The product is not made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid.

JA-1515-1516. The survey did not show respondents the actual product labels at issue, or the ingredients in the challenged products. *Id*. Nor did it ask survey respondents what they understood the term "All Natural"

---

[2] Dennis also conducted a materiality survey, purportedly designed to demonstrate that the "All Natural" label statement was material to consumers' purchasing decisions. KIND also moved to exclude the materiality survey on the grounds that it was unreliable and irrelevant. Dkts. 237, 238. The District Court did not reach the issue of Plaintiffs' materiality evidence and did not rule on its admissibility. SPA-47 n.30.

to mean. JA-1510-1516. Instead, it provided survey respondents with a vague definition and asked whether they agreed with it.

In addition to being leading, the survey used terms that it did not define. For example, the survey did not define "artificial and synthetic." Rather, Dennis stated that he assumed that respondents applied the same meaning as he did to those terms. *See* JA-1515. And even though the only alleged "artificial and synthetic" ingredients identified by Plaintiffs were vitamins, Dennis did not ask respondents about their expectations for products with added vitamins being labeled "All Natural" or whether consumers considered vitamins "artificial or synthetic." Likewise, Definition Two used the pejorative term "chemicals" and did not define the technical terms used, including, for example, not disclosing that Ascorbic Acid is simply vitamin C. In addition, the survey did not explain to respondents what "made using" meant. JA-1516.[3]

---

[3] Dennis did not clarify whether this question related to a product that included all four "chemicals" or some combination of them, and the survey did not indicate whether the "chemicals" were the artificial or synthetic ingredients asked about in the other question. JA-1516. If Dennis' own interpretation of Definition Two is credited, it was meant to ask respondents if the product "contain[ed]" all four of the listed chemicals. JA-1535-1536.

Accordingly, it is not clear at all what questions respondents thought they were being asked or were answering.

>   **2.  Plaintiffs Attempt To Establish The Falsity Of "All Natural" With Toutov's "Elements Of Naturalness" Framework**

Plaintiffs retained Toutov to opine regarding the truthfulness of "All Natural." JA-1737. To complete that task, Toutov invented the "Elements of Naturalness" framework—a subjective, three-part test that purported to analyze an ingredient's "origin[s]," its "production/processing," and its "final form." JA-1748-1749. According to Toutov, an ingredient could only be considered "natural" if it satisfied all three parts of the "Elements of Naturalness" test. JA-1749.

Toutov reviewed 15 ingredients, including canola oil, natural flavors, sunflower oil, and cocoa powder, that appeared in one or more of the challenged KIND products under the "Elements of Naturalness" framework. JA-1749-1802. Toutov's analysis did not focus on the manufacturing process for KIND's specific ingredients, but broadly considered the typical industrial processing of ingredients, including whether those ingredients could be from genetically modified sources. JA-1749-1802. Based on this analysis, Toutov determined that *none* of

the analyzed ingredients could generally be considered "natural" and, therefore, no KIND product could be labeled "All Natural." JA-1749-1802.

Toutov's "Elements of Naturalness" framework did not provide a definition of "natural" for a trier of fact to use to determine if the labeling of KIND products was deceptive to the reasonable consumer. JA-1934 (Tr. 43:25-44:8), JA-1935 (Tr. 46:21-47:12). That is because Toutov did not take into consideration what Plaintiffs, or reasonable consumers, believed "All Natural" to mean. JA-1937 (Tr. 56:20-24); JA-1938 (Tr. 60:9-15). To the contrary, Toutov disavowed any connection between his "Elements of Naturalness" framework and consumer perception of "natural" for food products. JA-1932 (Tr. 33:13-18); JA-1937 (Tr. 56:20-24); JA-1954 (Tr. 124:12). When asked "what role" consumers' thoughts about the meaning of "natural . . . ha[s] in that framework that you have created?" Toutov candidly admitted that it had "[n]one." JA-1937 (Tr. 56:20-24). Toutov also confirmed that his "Elements of Naturalness" framework was not designed to aid a consumer in determining whether a product is or is not natural. JA-1956 (Tr. 130:15-131:14).

Notably, Toutov disagreed with both of Dennis' proposed definitions of "natural" and testified that they were not a "proper definition of

natural," because "the evaluation of naturalness is more complex." JA-1938-1939 (Tr. 60:9-61:25).

### F. The District Court Grants KIND's Motions For Summary Judgment And To Decertify The Classes, And Excludes The Opinions Of Dennis And Toutov

After the close of discovery, KIND filed motions for summary judgment, to decertify the classes, and to exclude Plaintiffs' expert witnesses (Toutov, Dennis and Dr. Stephen Hamilton). *See* JA-1170, JA-1171, JA-1172, JA-1173, JA-1186. On September 9, 2022, the District Court granted KIND's motion for summary judgment, granted KIND's motions to disqualify the opinions of Dennis and Toutov, and granted KIND's motion to decertify the classes (the "Order"). SPA-19.

In the Order, the District Court held that Plaintiffs failed to demonstrate the existence of a triable issue of fact with respect to the required elements of the Natural Claim. SPA-18. The District Court determined that, not only did Plaintiffs fail to offer any admissible evidence of what "All Natural" meant to a reasonable consumer, they also failed to demonstrate the existence of a triable issue of fact that the "All Natural" statement on the KIND products was deceptive. SPA-40.

Specifically, the District Court found that the Dennis survey failed

to demonstrate a reasonable consumer's understanding of "All Natural" because it was biased and leading and, therefore, "would provide *no useful information* about how a reasonable consumer understands 'All Natural.'" SPA-34-39 (emphasis added).

Noting that the survey did not define key concepts like "natural" or "synthetic" for the respondents, the District Court concluded that "[a]ll plaintiffs have done here is show that consumers, when provided with the definition of 'All Natural' that plaintiffs' counsel constructed for this litigation, will click a check box saying that they agree to it." SPA-36. "But this," the District Court held, "is not evidence that the 'All Natural' label would deceive 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.'" SPA-36. The fundamental problem with the survey was that "[r]ather than determining how reasonable consumers understand the 'All Natural' claim, plaintiffs are supplying the standard, and then arguing that consumers were deceived. Defendant cannot be held liable because it has failed to adjust its labeling to hit the moving target of counsel's various solicited understandings of 'All Natural.'" SPA-37-38.

The District Court also considered Plaintiffs' argument that they

need not define "natural" at all, as well as their proposed additional definitions of "All Natural," and found that they were insufficient. SPA-21-40. The Order concluded that "plaintiffs have not introduced evidence that would allow a factfinder to determine a reasonable consumer's understanding of 'All Natural,' and therefore, their claims cannot survive defendant's motion for summary judgment." SPA-20.

Separately, the District Court found that Plaintiffs failed to demonstrate that "All Natural" was deceptive. SPA-40. Plaintiffs' only evidence as to whether the products were falsely labeled "All Natural" was Toutov's "Elements of Naturalness" analysis of KIND ingredients. *See* SPA-40; *see also* Dkt. 267 at 17-18. The District Court found that because "Dr. Toutov is clear that he did not consider a reasonable consumer's understanding of 'All Natural' in writing his report," it could not "answer the question that plaintiffs have provided [the] report to answer: whether the ingredients in the KIND products are not within a reasonable consumer's definition of 'All Natural.'" SPA-42. For this and other reasons, it also was inadmissible. *Id*.

Finally, the District Court decertified the classes. SPA-46-47. Regarding the requirement that common factual and legal issues

predominate, the District Court noted that, in "certifying the classes, Judge Pauley found [predominance] was satisfied because the 'All Natural' and 'Non GMO' claims were subject to a common proof: namely, if a challenged product contained a GMO, it would fail to be 'All Natural.'" SPA-46. But because Plaintiffs abandoned their GMO Claims, they also "eliminate[d] th[eir] theory of common proof." SPA-46. Left with only the Natural Claim, the District Court held, consistent with its ruling on the motion for summary judgment, that Plaintiffs had no common evidence of consumer deception. Accordingly, common issues of fact and law no longer predominated. SPA-46-47.

## SUMMARY OF ARGUMENT

The fundamental problem with Plaintiffs' case is that it depends on "the moving target of counsel's various solicited understandings of 'All Natural.'" *See* SPA-38. The Order reflects the District Court's commonsense determination that presentation of evidence of what the term "All Natural" means to reasonable consumers and how that claim is false would be required for a jury to decide the Natural Claim. Armed with that basic principle, the District Court examined whether Plaintiffs could establish a triable issue of fact regarding the Natural Claim and

properly determined that they could not. Accordingly, the Order should be affirmed.

The District Court first determined whether Plaintiffs could establish the meaning of "All Natural" in the eyes of reasonable consumers. Plaintiffs' *sole* evidence, the Dennis survey, was properly excluded because it was biased, leading, and irrelevant. The District Court also correctly found unconvincing Plaintiffs' other attempts to define "natural" or, alternatively, to argue that a definition of "natural" was not required. Absent any admissible evidence to demonstrate a reasonable consumer's understanding of the term "All Natural," Plaintiffs failed to establish the existence of a triable issue of fact on an essential element of their claims.

Second, the District Court considered whether Plaintiffs could demonstrate that reasonable consumers were deceived by the "All Natural" label statement. To do so, Plaintiffs relied on Toutov's created-for-this-litigation "Elements of Naturalness" analysis to support the conclusion that KIND products could not be considered "natural." But because Toutov admitted that his analysis did not take into account whether a reasonable consumer would be deceived, his report was

excluded as irrelevant. With no admissible evidence of consumer deception, the District Court properly granted summary judgment on this independent ground.

Finally, the district court determined whether class certification remained appropriate. Because Plaintiffs abandoned their GMO Claims and had no evidence of consumer deception regarding the Natural Claim, the District Court found that common questions of law and fact no longer predominated. That a different judge initially granted class certification does not change this Court's requirement that district courts must reassess class certification rulings as cases proceed to ensure ongoing compliance with Rule 23. Accordingly, the District Court did not abuse its discretion in decertifying the classes.

## STANDARD OF REVIEW

"A district court's grant of summary judgment is reviewed *de novo*." *Spak v. Phillips*, 857 F.3d 458, 461 (2d Cir. 2017). That grant will be upheld if the evidence "demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." *Glob. Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 150 (2d Cir. 2009). While this Court must consider the evidence in the light most

favorable to Plaintiffs and draw all inferences in their favor because they are the non-movants, Plaintiffs must also "come forward with specific facts showing that there is a genuine issue of material fact for trial." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

To do this, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must show that there is "significant probative evidence" on which a reasonable factfinder could decide in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quotation marks omitted). Plaintiffs may not rely upon "conclusory statements or mere allegations"; they must "go beyond the pleadings, and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (quotation marks omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[4] *Crawford v. Franklin*

---

[4] Plaintiffs' citation to *In re Joint Eastern & Southern District Asbestos Litigation*, 52 F.3d 1124, 1132 (2d Cir. 1995) is misleading and does not

*Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Class certification decisions are reviewed under an abuse of discretion standard "as to the ultimate decision and as to each of the Rule 23 requirements." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). When analyzing those decisions, this Court reviews "legal conclusions *de novo* and factual findings for clear error." *Id.* The district court "'is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions,' and we will only find 'abuse' when the district court's decision 'rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions.'" *Myers v. Hertz Corp.*, 624 F.3d 537,

---

properly frame the summary judgment standard of review. At issue in *In re Joint Eastern & Southern District Asbestos Litigation* were the district court's findings regarding the sufficiency of plaintiff's epidemiological studies offered to prove causation in connection with a motion for judgment as a matter of law. The complete quote is: "Applied to epidemiological studies, the issue is not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence." *Id.* at 1133. That statement is entirely supportive of the District Court's decision and does not provide Plaintiffs with a more favorable standard of review before this Court.

547 (2d Cir. 2010) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

Finally, this Court reviews a district court's determination to admit or exclude expert testimony under Federal Rule of Evidence 702 and *Daubert* for abuse of discretion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002). "A decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is 'manifestly erroneous,'" which is a significantly high bar to meet. *Id.* at 265 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995)); *see also In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 124 (2d Cir. 2020) (per curiam) (affirming district court's "rigorous review of each of plaintiffs' experts," where court "reasonably found that the experts' methods were not sufficiently reliable and that their conclusions were not otherwise supported by the scientific community."); *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir.), *cert. denied*, 142 S. Ct. 563 (2021) (no abuse of discretion in striking expert report about a survey). "Significantly, the abuse of discretion standard 'applies as much to the trial court's decisions about *how to determine reliability* as to its ultimate conclusion.'" *Amorgianos*, 303 F.3d

at 265 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The trial court is charged with making a "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Washburn v. Merck & Co.*, 213 F.3d 627, 2000 WL 528649, at *1 (2d Cir. 2000) (summary order) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)).

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF KIND

### A. The District Court Properly Applied The Reasonable Consumer Standard

Plaintiffs agree that the false advertising claims alleged in the ACC (whether based on state consumer protection statutes or the common law) are governed by the "reasonable consumer" standard. *See generally* Opening Br. 17-18, 23, 25-26, 54. At summary judgment, this standard required Plaintiffs to proffer admissible evidence demonstrating the existence of a triable issue of fact that reasonable consumers were deceived by the "All Natural" label statement. As the District Court correctly found, they did not. SPA-39-40.

The "reasonable consumer" standard is "an objective standard for determining whether acts or practices are materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances." *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *12 (N.D.N.Y. Sept. 27, 2017) (quotation marks omitted); *Randolph v. Mondelez Glob. LLC*, 2022 WL 953301, at *3 (S.D.N.Y. Mar. 30, 2022) (reasonable consumer standard is "an objective test"); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("the inquiry is whether, objectively, the act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007))); *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) ("An objective test is used to determine whether an act is deceptive under FDUTPA, and the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." (quotation marks omitted)).

The reasonable consumer standard requires more than a mere possibility that the defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable

manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016), *as amended* (Sept. 27, 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (mem.) (same). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (quotation marks omitted); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (plaintiff must establish that "deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) ("'Deceptive acts'" are acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." (quoting *Fink*, 714 F.3d at 741)).

The reasonable consumer standard required Plaintiffs to demonstrate that a significant portion of reasonable consumers were deceived by the "All Natural" statement. To do so, Plaintiffs had to adduce objective evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the challenged representation. *See*

*Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871-72 (E.D.N.Y. 2018); *Ries v. Ariz. Beverages USA LLC*, 2013 WL 1287416, at *6 (N.D. Cal. Mar. 28, 2013) ("[A]necdotal evidence alone is insufficient . . . . [T]o prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead [reasonable] consumers." (quotation marks omitted)). Compliance with that requirement here is crucial because, as Plaintiffs admit and many district courts have found, there is no widely accepted definition of the term "All Natural" as it was used on KIND products.[5] SPA-23-25; JA-1738 (Toutov created the "Elements of Naturalness" standard because "[t]here is no universal definition of naturalness accepted by all

---

[5] *See also Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *16-17 (N.D. Cal. June 13, 2014) (denying class certification because "there is no fixed meaning for the word 'natural'" and plaintiffs could not show that it had demonstrated any particular meaning in the minds of consumers); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695 (S.D. Fla. 2014) (due to differing interpretations of the term "natural," plaintiff failed to satisfy predominance because she had "not demonstrated that an objectively reasonable consumer would agree with her interpretation of 'all natural'"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) ("Plaintiffs fail to sufficiently show that 'All Natural' has any kind of uniform definition among class members . . . or that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members.").

stakeholders involved in sourcing, manufacturing, selling, and consuming of food products.").

**B. The District Court Correctly Ruled That Plaintiffs Did Not Establish What "All Natural" On KIND Labels Means To The Reasonable Consumer**

The District Court correctly ruled that Plaintiffs failed to offer any admissible evidence to demonstrate a reasonable consumer's understanding of KIND's "All Natural" label statement. SPA-39. In reaching that conclusion, the District Court properly excluded Plaintiffs' expert testimony on this subject and rejected Plaintiffs' alternative arguments that they were not required to offer a definition at all, that a definition could be gleaned through various documents, or that it should be left to the jury to decide. SPA-23-39.

At summary judgment, Plaintiffs are not entitled to kick the can down the road—and the District Court is not required to stand aside while they do so. Absent admissible evidence demonstrating what a reasonable consumer thinks the term "All Natural" means, Plaintiffs cannot meet their burden of proof at trial on their Natural Claim. Accordingly, summary judgment was properly granted.

## 1. The District Court Did Not Abuse Its Discretion In Excluding The Dennis Survey

Plaintiffs' only evidence of the reasonable consumer's understanding of the "All Natural" label statement was Dennis' perception survey. JA-1503. Because the District Court found that Dennis' survey was unreliable and irrelevant, it was properly excluded. Plaintiffs have not, and cannot, establish that this decision constituted an abuse of discretion by the District Court.[6]

First, Plaintiffs argue that the District Court made an "error of law" by excluding the Dennis Survey because this Court applies a blanket rule that "[c]hallenges to the design and implementation of consumer

_____

[6] Plaintiffs acknowledge that an abuse of discretion only occurs "when a district court: (i) bases a decision on an error of law or a clearly erroneous factual finding; or (ii) reaches a decision that is outside the range of permissible decisions." Opening Br. 40. In setting forth this standard, the Opening Brief purports to quote from *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 385 (2d Cir. 2006), for the conclusion that an "an evidentiary ruling is 'reversible if it also affects a party's substantial rights.'" Opening Br. 40. But that is not correct. The actual quote from *Boyce* is: "An evidentiary ruling **that is an abuse of discretion** is, however, only reversible if it also affects a party's substantial rights." *Boyce*, 464 F.3d at 385 (emphasis added). Accordingly, *Boyce* confirms that Plaintiffs' burden before this Court is more stringent (not less); Plaintiffs must first establish that the District Court's decision was an abuse of discretion and then also demonstrate that it was reversible error because it affected substantial rights.

perception surveys go to the weight of the evidence and do not affect admissibility." Opening Br. 42. The decisions cited by Plaintiffs do not stand for such a proposition and this Court's precedent contains no such general exception from the requirements of Federal Rule of Evidence 403, Federal Rule of Evidence 702, or *Daubert* for consumer surveys. That is because "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Amorgianos*, 303 F.3d at 266 (cleaned up); *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) (not discussing *Daubert* or Rule 702, and recognizing that errors in methodology go to the weight of the evidence, "subject, of course, to Rule 403's more general prohibition against evidence that is less probative than prejudicial or confusing."); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999) (holding that survey evidence offered to show actual confusion was properly excludable under Rule 403 when it was so flawed that its probative value was outweighed by the risk of prejudice or confusion.).

It is therefore unsurprising that numerous courts have excluded consumer surveys based on flaws in their design or methodology.[7] *See Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, 2004 WL 326708, at *9 (S.D.N.Y. Feb. 23, 2004) ("The Survey . . . is flawed to the point that its probative value is substantially outweighed by the Survey's potential for unfair prejudice and confusion, and the likelihood that it will mislead the jury."); *Malletier v. Donney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007) ("The bottom line is that if the survey suffers from substantial methodological flaws, it will be excluded under both Rule 403 and Rule 702."); *see also Saxon Glass Techs., Inc. v. Apple Inc.*, 393 F. Supp. 3d 270, 285-86 (W.D.N.Y. 2019) (same). As one court noted, there

---

[7] Consistent with those decisions, appellate courts regularly affirm the exclusion of experts due to methodological shortcomings. *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 197-98 (4th Cir. 2013) (per curiam) (affirming exclusion of expert: although the expert's methodology was admissible when "performed properly," the expert did not reliably apply it); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342-43 (11th Cir. 2010) (affirming exclusion of expert: Although the expert used a "valid and reliable methodology," the application of the methodology was flawed); *Burke v. Gen. Motors Corp.*, 218 F. App'x 951, 953-54 (11th Cir. 2007) (per curiam) (affirming exclusion of expert's testimony because it was methodologically flawed); *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (affirming district court's exclusion of damages expert because, among other things, the expert made various unsubstantiated assumptions and relied on a report largely based on speculation).

is a distinction between "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method," which will not render an expert's opinion "per se inadmissible" and more significant flaws or modifications that will. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 n.12 (S.D.N.Y. 2015) (quoting *Amorgianos*, 303 F.3d at 267).

The cases relied on by Plaintiffs do not contradict the well-established rule that the decision to admit survey evidence should be left to the sound discretion of the district court. Significantly, in Plaintiffs' cited cases, the surveys were admitted because, in the discretion of the district courts, their methodological and design flaws were deemed to be not so severe as to warrant exclusion. *See Playtex Prods., Inc. v. Procter & Gamble Co.*, 2003 WL 21242769, at *2 (S.D.N.Y. May 28, 2003) (finding in assessing Rule 403 that "[t]he methodological flaws proffered by Playtex are not so egregious or clear cut that the Court can conclude that the highly probative value of the survey to P & G's counterclaim is outweighed by its prejudicial effect."), *aff'd*, 126 F. App'x 32 (2d Cir. 2005); *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457, 461 (S.D.N.Y. 2002) (similar). Here, the District Court, in its

discretion, concluded that the design and methodology flaws *were* sufficiently severe as to warrant exclusion.

Second, this Court should not second-guess the District Court's determination to exclude the Dennis survey simply because his surveys have not been excluded in other cases.[8] Opening Br. 46. There is no lifetime pass for experts. The only issue presented in this appeal is whether the District Court abused its discretion in excluding *this* Dennis survey in *this* case.

Third, Plaintiffs contend that the District Court improperly criticized the Dennis survey because of its use of closed-ended questions

---

[8] Dennis is a prolific plaintiff-side expert and his surveys have also been excluded by courts that found them unreliable and irrelevant. *See Pardini v. Unilever U.S., Inc.*, 2020 WL 6821071, at *4 & n.2 (N.D. Cal. July 10, 2020) (Dennis survey struck, and class certification motion denied, where Dennis opinions did not address the theory of liability because he did not test specific challenged statements); *In re Williams-Sonoma Song-Beverly Act Cases*, No. JCCP-4611 (Cal. Super. Ct. S.F. Cnty. Mar. 16, 2018) (rejecting Dennis survey and granting motion to decertify class where Dennis tested different signage than what was at issue); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 975-76 (N.D. Cal. 2014) (finding that a Dennis survey did not provide credible evidence, in part, because it failed to ask respondents about the specific issues in the litigation), *aff'd in part and rev'd in part on other grounds*, 802 F.3d 1049 (9th Cir. 2015).

while ignoring Dennis' explanations for his design choice.[9] Opening Br. 46. The District Court did not ignore Dennis' explanations. Rather, it found them unpersuasive because, as explained by Diamond's Reference Guide, closed-ended questions "direct the respondent away from or toward . . . particular response[s]." Sahri Seidman Diamond, Reference Guide on Survey Research 392, *in* Reference Manual on Scientific Evidence (3d ed. 2011). Thus, responses to closed-ended questions "will be meaningful only if . . . the choices cover all possible answers a respondent might give to the question"—which was plainly not the case in the Dennis survey. *See id.* at 393.

Regardless, Dennis' explanations of why he used closed-ended questions did not alter the fundamental problem with his survey: that the questions were designed solely to support Plaintiffs' deception theory and not to demonstrate legitimate consumer perceptions. *See, e.g.,* JA-2512 ¶ 29 (Dennis used closed-ended questions because respondents

---

[9] Dennis claimed that open-ended questions could create coding issues because "[b]y their very nature, open-ended questions produce text entries typed in by the respondents." JA-2512 ¶ 30. This, in turn, requires researchers to develop coding schemes, which Dennis claimed could induce bias. *Id.*

otherwise "might be unmotivated or unable to articulate what they understand the 'All Natural' claim to mean to them.").

Finally, Plaintiffs argue that because both sides retained expert witnesses, there was a "battle of the experts" on a disputed factual issue that should be resolved by the jury. Opening Br. 44-45. But Plaintiffs do not identify what the alleged "disputed factual issue" between the experts is—because there is none.[10] KIND did not conduct a consumer perception survey, nor did it offer contrary evidence or argument as to what reasonable consumers thought "All Natural" meant. There is no "battle of the experts" as to how the reasonable consumer interprets the phrase "All Natural."

The arguments raised by Plaintiffs are insufficient to establish that the exclusion of the Dennis survey was an abuse of discretion. Plaintiffs tacitly admit as much by not addressing the District Court's findings that the Dennis survey was unreliable because: (i) the overall design was "biased and leads the consumer to the select the answer preferred by

---

[10] KIND introduced the expert testimony of Dr. Ran Kivetz, who criticized Dennis' survey. JA-1973-2023. But whether Dennis' survey is leading, biased, or if the survey questions were proper is not a "disputed factual issue" for the jury—it is a threshold legal question that courts can and should determine in the first instance. *See* Fed. R. Evid. 702.

plaintiffs," and (ii) the "manipulative design choice" meant that the survey questions had "no probative value and could not assist a trier of fact."[11] SPA-29, 34.

As Dennis testified: "My exercise was not a general one of measuring consumers' opinions of the 'All Natural' claim in a vacuum. I was asked to test the plaintiffs' theory of liability; so it was not an open-ended fishing exercise to measure what consumers just thought of the 'All Natural' claim." SPA-31; JA-1906 (Tr. 81:2-7). Rather than assessing consumers' perceptions of the actual label statements, Dennis "construct[ed] a broad definition of 'All Natural,' [and] circulate[d] that definition for consumer approval," SPA-37, allowing Plaintiffs to use that artificially constructed approval to claim that reasonable consumers agreed with the proffered definition. For that reason, the Dennis survey "provide[s] no useful information about how a reasonable consumer understands 'All Natural'" because it was not designed, and never intended, to do that. SPA-34. Accordingly, the district court did not abuse its discretion in excluding it.

---

[11] There were also other significant methodological flaws with the study, including, *inter alia*, the survey's failure to define key terms and the lack of a control group or filter questions. *See* JA-1503-1516.

### 2. Plaintiffs Were Required To Demonstrate The Reasonable Consumer's Interpretation Of The Term "All Natural"

Alternatively, Plaintiffs argue that they were not required to establish a "concise and singular definition" of "All Natural" that was "universally accepted.'" Opening Br. 24-26; SPA-36. Instead, relying on decisions rendered at the pleading stage such as *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), Plaintiffs assert that all they were required to do was put forward *possible* definition[s] of "All Natural," and leave it to the jury to decide whether their those definitions were "reasonable." [12] Opening Br. 24-25; *Compare* Opening Br. 20 ("natural" is the absence of GMOs); Opening Br. 1, 19 (implying "All Natural" means "no synthetic or artificial ingredients"); Opening Br. 23 ("the only issue before the court on summary judgment was . . . whether a reasonable consumer might be misled by an "All Natural" label where the product contains synthetic, heavily processed, or bioengineered ingredients") and Opening Br. 23-24

---

[12] The documents referenced by Plaintiffs include documents regarding the Canadian government's standard for "natural" labeling, documents that conclude that consumers think that a "natural food product" is "made of 100 percent natural ingredients," and publicly available surveys regarding "natural" that focus on product attributes like "artificial materials or chemicals, toxic pesticides and GMOs." *See, e.g.*, Opening Br. 31-32.

("a prevalent understanding of natural foods as those that are 'minimally processed'"). As the District Court correctly found, this argument "distorts the reasonable consumer standard" because it is Plaintiffs' burden to show that reasonable consumers were deceived. SPA-38.

*Mantikas* considered whether the plaintiff had *alleged* a plausible theory of consumer deception sufficient to defeat a motion to dismiss directed at the allegations of the complaint. *Mantikas*, 910 F.3d at 636-39.[13] But, at summary judgment the issue is not whether Plaintiffs can allege a *plausible* or *reasonable* definition of "All Natural." Rather, the question is whether Plaintiffs can *prove* with affirmative, admissible evidence that reasonable consumers were deceived by the "All Natural" statement.[14] Accordingly, the District Court correctly rejected this so-

---

[13] The other district court decisions on which Plaintiffs rely are inapposite for these same reasons. *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) (at motion to dismiss, determining whether plaintiff alleged a plausible theory of deception); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (same).

[14] Continuing with this argument, Plaintiffs contend that the "underlying scientific literature and government regulations" cited in Toutov's report, along with KIND's internal documents, created an "issue of fact as to the reasonableness of a consumer's belief that foods containing synthetic and artificial ingredients are not 'All Natural.'" Opening Br. 28-32. Plaintiffs' argument again "misses the mark" because the issue is not whether Plaintiffs have pled a plausible definition, but

called "evidence" because none of it relates to Plaintiffs' claims in *this* case or the issues at summary judgment *here*.

For example, Plaintiffs contend that the District Court erred in finding that "NON GMO" was no longer a viable basis for their "All Natural" Claim.[15] Opening Br. 20. But Plaintiffs do not connect the dots between this argument and any issue on appeal. Even if this Court were to determine that Plaintiffs had demonstrated that reasonable consumers believed the "All Natural" statement on KIND products meant that the subject products did not contain any genetically engineered ingredients, that determination would not help Plaintiffs

---

rather whether they have demonstrated a triable issue of fact as to what the reasonable consumer believes the "All Natural" statement on KIND products means. SPA-36.

[15] Similarly, Plaintiffs do not explain their criticism of the District Court's conclusion that there is no universally agreed-upon definition of the term "All Natural" as applied to food labeling. SPA-23-25. Indeed, Plaintiffs agree with this conclusion and have never asserted otherwise. *See* Opening Br. 25-26 (there is no "precise definition" of "All Natural" and any implication in that a "concise and singular" definition of "All Natural" exists is "unfounded, unsupported by any other authority, and was explicitly rejected by Judge Pauley."); *see also* JA-1738 (Toutov's report states that "[t]here is no universal definition of naturalness accepted by all stakeholders involved in the sourcing, manufacturing, selling, and consuming of food products."); JA-1182 ¶ 59; JA-1175 ¶ 2, JA-1177 ¶¶ 12, 17, JA-1178 ¶ 29.

because they voluntarily dismissed the GMO Claims and proffered no evidence that KIND products *did*, in fact, contain genetically engineered ingredients. [16] *See* SPA-21.

Significantly, Plaintiffs do not allege that any of the documents cited in the Opening Brief convey what they contend reasonable consumers understand the term "All Natural" to mean in the context of KIND products, nor that their theory of deception is based on these documents.[17] Consistent with the reasonable consumer standard,

---

[16] Plaintiffs did not make either of those arguments at summary judgment below and thus they are waived. *See United States v. Wasylyshyn*, 979 F.3d 165, 172 (2d Cir. 2020) (stating the general rule that "we will not consider arguments first raised on appeal to this court.").

[17] Indeed, much of the evidence they reference in their Opening Brief concerns materiality, which is not at issue on appeal. *See* SPA-47 n.30 (the District Court did not reach issues of materiality or injury because Plaintiffs failed to establish deception). For example, Plaintiffs contend that the District Court erred because it did not consider KIND's "admissions" in internal documents that "natural" was a purchase driver for consumers. Opening Br. 31-32. Whether "natural" statements are material, of course, is a different question from what "natural" means and whether a "natural" statement would deceive a reasonable consumer or cause injury. There is every reason to believe that, in the unlikely event of reversal and remand, the District Court would rule that Plaintiffs have not demonstrated a triable issue of fact as to materiality or proof of injury, each of which is an independent reason to grant summary judgment and decertify the classes.

Plaintiffs were required to come forward with admissible evidence demonstrating what a reasonable consumer expected of KIND products because of the "All Natural" statement. After more than seven years of litigation, Plaintiffs failed to produce any such evidence, which is fatal to their case. *See Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018) (absent evidence of deception, summary judgment was proper); *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1344 (S.D. Fla. 2021) (FDUPTA requires a plaintiff to establish a deceptive act or unfair practice); *Major v. Ocean Spray Cranberries, Inc.*, 2015 WL 859491, at *5 (N.D. Cal. Feb. 26, 2015) (granting summary judgment because plaintiff did not establish "a material factual dispute as to whether the [challenged label statement] was false, misleading or deceptive"), *aff'd*, 690 F. App'x 564 (9th Cir. 2017).

### C. The District Court Correctly Held That Plaintiffs Failed To Raise A Triable Issue Of Fact That The Natural Claim Deceived Reasonable Consumers

The District Court also correctly concluded that Plaintiffs could not establish a triable issue of fact that use of the term "All Natural" deceived reasonable consumers. SPA-25-40. Plaintiffs proffered the Toutov report "for the purpose of demonstrating the *veracity* of KIND's 'All Natural'

labeling statements." Opening Br. 51 (emphasis in original). The District Court correctly found that Toutov's opinions were irrelevant to its determination of whether a reasonable consumer was deceived by the Natural Claim and, therefore, excluded his testimony. SPA-40-44. Absent any admissible evidence on this essential element of Plaintiffs' claims, the District Court appropriately granted summary judgment. *Id.* On appeal, Plaintiffs fail to establish that the District Court's decision to exclude Toutov's report was an abuse of discretion or that Plaintiffs presented any other admissible evidence to create a triable issue of fact that reasonable consumers were deceived by the "All Natural" label statement.

1.   **The District Court Did Not Abuse Its Discretion In Excluding Toutov's Report**

The District Court did not abuse its discretion in excluding Toutov's report because it was irrelevant, *e.g.*, his opinions did *not* "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos*, 303 F.3d at 259, 265 (quoting *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001)); *see also Opto Generic Devices, Inc. v. Air Prods. & Chems., Inc.*,

2010 WL 982410, at *7 (N.D.N.Y. Mar. 15, 2010) (excluding "irrelevant" expert opinion because it was based on test which predated performance under the relevant contract); *Bowe v. Pub. Storage*, 2015 WL 10857339, at *8 (S.D. Fla. June 2, 2015) (excluding expert opinion because testimony was were "irrelevant" to FDUTPA claim and the reasonable consumer standard).

To meet the relevancy standard, Toutov's report was required to relate to the issue of whether the "All Natural" label statement deceived the *reasonable consumer*. By Toutov's own admission, it failed because his "Elements of Naturalness" analysis did ***not*** provide a standard that the trier of fact could use to determine whether the *reasonable consumer* was deceived. *See* JA-1932 (Tr. 33:13-18); JA-1937 (Tr. 56:20-24); JA-1938 (Tr. 60:3-15); JA-1954 (Tr. 124:12); *See* JA-1932 (Tr. 33:13-18); JA-1937 (Tr. 56:20-24); JA-1938 (Tr. 60:3-15); JA-1954 (Tr. 124:12); *see also* JA-1956 (Tr. 130:15-131:14). The deposition testimony that Plaintiffs claim was mischaracterized is unambiguous on that point:[18]

---

[18] The Opening Brief characterizes the District Court's findings as "a misinterpretation of a single line of [Toutov's] deposition." Opening Br. 52. But that argument is demonstrably untrue, as shown above. Regardless, if the relevant "single line" of Toutov's deposition testimony

43

Q.    What is the role of consumer perception in your opinions about natural?

A.    So first I will say that I'm, of course, not an expert on consumer perception. I was not engaged to opine on consumer perception. But the literature that I reviewed, of course, has elements, an entire body of work, really, that exists—only a few cases I actually cite—but an entire body of work, entire field of study actually related to consumer perceptions seems to indicate that a label that says natural and/or a label that says all natural has some sort of desirability criteria.

Q.    Well, that's not the question I asked you, so let me try it again.

A.    I'm sorry.

Q.    So what I'm trying to figure out is you—although you say you're not defining natural, you're coming up with guidelines or a process in order to determine whether or not a food product is natural; correct?

A.    If I may just—

Q.    Yes.

A.    I'm not—so I'm not coming up with guidelines. I tried to, I guess, say correctly earlier when we were discussing my role here that my goal was to distill and summarize standards and regulatory elements that exist into this framework rather than creating a new framework. I guess that wasn't the implication, but I just wanted to make sure that that was clear.

---

was the above admission that he did not consider consumer perception of the "All Natural" statement in rendering his conclusions, then that "single line" is more than enough to render his opinions irrelevant.

Q. **So as part of distilling all of this information into a framework, what role did what consumers think all natural or natural [means] have in that framework that you have created?**

A. **Oh. None.**

JA-1937 (Tr. 55:15-56:24) (emphasis added).

Plaintiffs argue that because consumer deception was allegedly "baked into" some of the underlying materials Toutov considered when he created the "Elements of Naturalness" framework, *ipso facto*, Toutov necessarily considered consumer perception. Opening Br. 52-53. The issue, however, is not whether some of the source materials that Toutov used to create his "Elements of Naturalness" standard included some consideration of consumer perceptions, but rather, whether the "Elements of Naturalness" framework reflects the reasonable consumer's understanding of the "All Natural" statement on KIND products. It does not. Accordingly, it was not an abuse of discretion for the District Court to determine that Toutov's idiosyncratic determination of whether he thought an ingredient was "natural" was not "relevant to the task at hand" of determining whether the "All Natural" statement deceived reasonable consumers. SPA-38, 41 (quoting *Daubert*, 509 U.S. at 597).

Further demonstrating Plaintiffs' failure to meet the abuse of discretion standard, they do not address the District Court's additional, related finding that Toutov's failure to consider or apply the Dennis definitions of "All Natural" further contributed to its irrelevance. SPA-42. If, as Plaintiffs assert, Dennis' definitions represent what reasonable consumers expect from products labeled "All Natural," then Toutov's testimony only carries weight if it establishes whether the challenged KIND products met those expectations. But Toutov's opinions did not do so. In fact, Toutov *rejected* the Dennis definitions as incomplete and stated that a determination of whether a product could be labeled "natural" required a "more complex" evaluation involving "additional steps" beyond what Dennis proposed. *See* JA-1183 ¶ 68.

Finally, Plaintiffs assert that the District Court abused its discretion in finding that the Toutov report was irrelevant because it was based on an analysis of "irrelevant ingredients." Opening Br. 55. Plaintiffs misconstrue the Order. The District Court did not state that the "entirety" of Toutov's report related to irrelevant ingredients. Instead, the District Court correctly identified that Toutov's analysis "largely" referred to "typical" manufacturing techniques that were not

used for KIND ingredients, and conspicuously considered GMO status in its determination of an ingredient's purported "naturalness."[19] SPA-43-44. In so doing, the District Court was well within its discretion to conclude that because Toutov's analysis was inextricably intertwined with consideration of ingredients and processes that were unrelated to KIND's ingredients, it was irrelevant and prejudicial for that independent reason. *See* SPA-40-44.

### 2. Plaintiffs Failed To Demonstrate A Triable Issue Of Fact Regarding Whether Kind Plus Antioxidants Bars Deceived Reasonable Consumers

Plaintiffs argue that because Toutov's report identified synthetic vitamins A and C as ingredients in at least one product, they established

---

[19] The District Court recognized that Toutov "never conducted any chemical analysis of KIND products to test for non-natural ingredients" (which Plaintiffs do not dispute) and found that his analysis considered and discussed what typically occurs in the manufacturing process for the challenged ingredients and not how KIND ingredients were manufactured. SPA-43; *See, e.g.*, JA-1750-51 ¶¶ 38, 39, 40, 41, JA-1755 ¶ 48, JA-1757 ¶ 51, JA-1758 ¶ 53, JA-1762-1763 ¶ 57, JA-1763 ¶ 59, JA-1765-1766 ¶ 64, JA-1767-1768 ¶ 66, JA-1772-1773 ¶ 75, JA-1773-1774 ¶ 76, JA-1777 ¶ 80, JA-1778 ¶ 82, JA-1781-1782 ¶ 87, JA-1784 ¶ 92, JA-1784-1786 ¶ 94, JA-1786 ¶ 96, JA-1788-1789 ¶ 102, JA-1792 ¶ 107, JA-1794-1795 ¶ 113, JA-1796 ¶¶ 116, 117, JA-1797-1798 ¶ 119, JA-1798 ¶ 121.

a triable issue of fact for the jury.[20] Opening Br. 53. Not so. The issue at summary judgment was not whether Plaintiffs could identify a single allegedly synthetic ingredient in a KIND product. Rather, the issue at summary judgment was whether Plaintiffs could demonstrate that a reasonable consumer was deceived by the "All Natural" statement because of the presence of allegedly synthetic vitamins A and C in a KIND product. On this issue, Plaintiffs offered no evidence at all.

Plaintiffs would have had to demonstrate that the "All Natural" label statement on KIND Plus Antioxidants bars with vitamins A and C—where the front label prominently declares that the bar contains the added antioxidants vitamins A and C—deceived reasonable consumers. *See* SPA-43 n.27. But Plaintiffs never made this specific assertion, much less proffered evidence to support it at summary judgment. Dennis' survey provides no support because Dennis does not define "artificial [or] synthetic," nor does it ask questions about synthetic vitamins or the actual KIND Plus Antioxidants product label. Plaintiffs presented no

_____

[20] Plaintiffs frame the issue as one of whether KIND products are "All Natural" because they contain artificial and synthetic ingredients. Opening Br. 29. But not only do Plaintiffs fail to explain how that phrase is understood by reasonable consumers, the only purportedly synthetic ingredients identified by Toutov are vitamins A and C. SPA-43 n.27.

other evidence of what a reasonable consumer's expectation would be for a "natural" statement on the KIND Plus Antioxidants bar with synthetic added vitamins. Absent any evidence that ties this allegation to consumer expectation, there is no triable issue of fact for the jury.[21]

## II. THE DISTRICT COURT'S DECISION TO DECERTIFY THE CLASSES WAS NOT AN ABUSE OF DISCRETION

Plaintiffs argue that District Court was precluded by the "Law of the Case" doctrine from reviewing the Class Certification Order and, accordingly, the decision to decertify the classes was an abuse of discretion because it was an error of law. Opening Br. 33-39. According to Plaintiffs, because the case was transferred between judges, the operation of Rule 23 jurisprudence was suspended. But that argument is contrary to the well-established principle that a District Court must "'reassess . . . class rulings as the case develops'" to "ensure continued compliance with Rule 23's requirements." *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)).

---

[21] As the District Court noted, this purported claim does not present a plausible theory of deception. *See* SPA-43 n.27.

A "district court has the affirmative duty of monitoring its class decisions." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (quotation marks omitted).[22] Of course, Rule 23 jurisprudence does not change simply because a case is reassigned to a new judge. Consequently, a "district court may—and should—decertify a class when the standards of Rule 23 have not been met." *Wu v. Pearson Educ. Inc.*, 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012). For this reason, a "new judge is not precluded from reevaluating the certification in light of changed circumstances." *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 54 (S.D.N.Y. 1987), *as amended* (Feb. 3, 1987). That is exactly what happened here.

Plaintiffs ignore these principles in their attempt to convince this Court that class certification decisions should be considered "law of the case" and are therefore not reviewable or subject to change by a successor

---

[22] "[A]ctual, not presumed, conformance with Rule 23[] remains . . . indispensable" to the continued maintenance of a class action. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "Any fact that develops or comes to light between the certification decision and entry of final judgment that calls into serious question the satisfaction of any of the requirements of Rule 23(a) or (b) . . . will justify immediate decertification or revision of the class." 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:6 (19th ed.).

trial court judge. In addition to misapplying Rule 23's requirements, this argument also gets wrong the law of the case doctrine.

"The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (cleaned up). Plaintiffs identify no "rule of law" established in this case on which the District Court reversed itself. Moreover, the "[a]pplication of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 165 n.5 (2d Cir. 2000) (quoting *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)).[23] "The only limitation placed upon a trial judge's

---

[23] *See also Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("the doctrine is discretionary, not mandatory."). "Just as [the law of the case] doctrine would not have precluded Judge [Pauley] from reconsidering his own rulings, it does not bar Judge [Buchwald] from doing so where previous rulings were made by a different judge." *Stuto v. Herman*, 181 F.3d 83, 1999 WL 335369, at *1 (2d Cir. 1999) (table); *see also Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (law of the case doctrine would not preclude court from granting summary judgment based on evidence after denying a motion to dismiss based only on plaintiff's allegations).

decision to disregard a previous ruling by a judge of coordinate jurisdiction is that prejudice not ensue to the party seeking the benefit of the doctrine. In this context prejudice does not mean the harm which results from a failure to apply the doctrine; rather, it refers to a lack of sufficiency of notice and an opportunity to prepare armed with the knowledge that one judge is disregarding the ruling of another." *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) (citation omitted); *accord Jennings v. Yurkiw*, 18 F.4th 383, 394 n.8 (2d Cir. 2021) ("the law of the case doctrine 'need not be applied when no prejudice results from its omission.'" (quoting *First Nat'l Bank of Hollywood v. Am. Foam Rubber Corp.*, 530 F.2d 450, 453 n.3 (2d Cir. 1976))).

Not only do Plaintiffs fail to identify any rule of law by which they believe the District Court was bound, they do not demonstrate that they suffered any prejudice.[24] Plaintiffs' disappointment in the District

---

[24] The cases cited by Plaintiffs confirm that the law of the case doctrine applies when a court decides a *rule of law*. *See, e.g. Aramony*, 254 F.3d at 410 (addressing whether law of the case doctrine barred court from ruling that a replacement benefit plan was not ambiguous); *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (addressing whether individualized reliance standard could be applied in the case); *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 841 (S.D.N.Y. 2018) (addressing whether certain issues were law of the case including whether plaintiff needed to

Court's decision does not rise to the level of prejudice, particularly given that Plaintiffs had a full and fair opportunity to oppose KIND's motion for decertification. *See* Dkt. 274.

Moreover, even if Plaintiffs were correct that the District Court could not decertify the classes absent a "changed circumstance," that requirement has been met. Plaintiffs' assertion that "[n]othing has changed from Judge Pauley's class certification determination that predominance for the 'All Natural' claim is satisfied" cannot be squared with the facts. *See* Opening Br. 36. Since the Class Certification Order, Plaintiffs abandoned their GMO Claims, expert opinions were finalized and issued, the parties completed discovery, and the case was postured such that Plaintiffs could no longer rely on "plausible allegations," but rather, were required to offer admissible evidence—that is, actual proof.

By abandoning their GMO Claims, Plaintiffs eliminated the theory of common proof upon which the Class Certification Order was based.[25]

---

prove actual damages if it reasonably settled with a party to whom it was liable for damage during the policy period).

[25] Plaintiffs' abandonment of the GMO Claims independently justified decertification of the Certified Classes because they were now rendered overbroad. In the Order, the District Court found that, to the extent the Certified Classes included labels that did not have the "All Natural"

SPA-46. Moreover, the District Court determined as a matter of law that Plaintiffs did not have class wide *evidence* of consumer deception regarding the "All Natural" statement. *See* SPA-46-47. Accordingly, common issues of fact and law no longer predominate, and the District Court did not abuse its discretion in decertifying the classes.

---

statement, "these 'subclasses' are considered voluntarily dismissed." SPA-47 n.29. Plaintiffs do not challenge this part of the Order.

# CONCLUSION

The District Court's order granting summary judgment in favor of KIND, excluding Plaintiffs' experts, and decertifying the classes should be affirmed.

Respectfully submitted,

*/s/Keri Borders*
Keri Borders
Dale Giali
Rebecca Johns
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
(213) 443-4355
kborders@kslaw.com

*Counsel for*
*Defendant-Appellee KIND LLC*

April 20, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 11,337 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 ProPlus.

Dated: April 20, 2023

_/s/Keri Borders_
Keri Borders

## CERTIFICATE OF SERVICE

I hereby certify that, on April 20, 2023, an electronic copy of the foregoing Brief for Appellee was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/Keri Borders
Keri Borders